**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evolution Nutraceuticals Incorporated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ThermoLife International LLC,<br><br>　　　　　Defendant. | No. CV-25-00461-PHX-DJH<br><br>**ORDER** |

Before the Court is Plaintiff Evolution Nutraceuticals Incorporated's ("Plaintiff") fully briefed Motion for Preliminary Injunction (Doc. 20) and Defendant ThermoLife International LLC's ("Defendant") fully briefed Motion to Strike Portions of Plaintiff's Reply in Support of its Motion for Preliminary Injunction (Doc. 61).

Plaintiff produces dietary supplement products to stimulate safe, sustained nitric oxide in the body's vasculature. (Doc. 1 at ¶ 21). Defendant is a raw material supplier for dietary supplements, holding multiple patents including the one at issue here–U.S. Patent No. 8,455,531 ('531 Patent). (*Id.* at ¶¶ 25–26). Patent '531 is directed to nitrate-containing amino acid compositions and their use in a human or animal for increasing bioabsorption of amino acids or vasodilative characteristics. (Doc. 1-1 at 1). At particular issue here is claim 62, which states:

> A solid supplement formulation comprising: at least one non-ester nitrate compound; and at least one isolated amino acid compound selected from the group consisting of Agmatine, Beta Alanine, Citrulline, L-Histidine, Norvaline, Ornithine, Aspartic Acid, Cysteine, Glycine, Lysine, Methionine, Praline, Tyrosine, and Phenylalanine, wherein the at least one isolated amino

>acid compound is a separate compound than the at least one non-ester nitrate compound.

(*Id.* at 6).

Amongst other places, Plaintiff's dietary supplement products are sold on Amazon. (Doc. 1 at ¶ 4). The at-issue products were sold under the ASINs: B071T51TWY, B0CWW3GD39, B01H6BTRFO (the "Accused Products"). (*Id.*) Defendant, believing that the Accused Products infringed on its patented nitrate, filed notices of infringement with Amazon. (*Id.* at ¶¶ 4–5). Amazon, consequently, sent Plaintiff Policy Violation Notices and removed the Accused Products listings from its website. (*Id.* at ¶ 4).

Following unsuccessful attempts to restore the Accused Products on Amazon, Plaintiff brought this action against Defendant on February 12, 2025. Plaintiff claims include declaratory judgment of non-infringement of the '531 Patent, declaratory judgment of invalidity of the '531 Patent, violation of the Arizona Consumer Fraud Act, trade libel, false or misleading representation and product disparagement under 15 U.S.C. § 1125, tortious interference, and bad faith infringement under the Arizona Patent Troll Prevention Act. (*Id.* at ¶¶ 88–155). In its Complaint, Plaintiff alleges that Accused Products held no more than a de minimis amount of nitrate and, therefore, did not infringe on Defendant's '531 Patent. (*Id.* at ¶¶ 31–56). Further, Plaintiff claims that, if the de minimis amount of nitrate in its Accused Products infringed the '531 Patent, then the Patent is invalid as obvious or anticipated by prior art supplements. (*Id.* at ¶¶ 57–73)

On April 26, 2025, Plaintiff filed a Motion for Preliminary Injunction to enjoin Defendant's allegedly wrongful assertion of the '531 Patent and compel Defendant to withdraw Amazon takedown requests concerning the Accused Products. (*See* Doc. 20). Plaintiff argues that it has a reasonable likelihood of success on the merits in regard to its declaratory judgment of non-infringement of the '531 Patent and declaratory judgment of invalidity of the '531 Patent claims. To demonstrate its likelihood of success, Plaintiff expands upon the points raised in its Complaint; namely, that de minimis amounts of nitrate do not infringe the '531 Patent and the '531 Patent is invalid under prior art and because it

lacks markedly different characteristics from amino acids and nitrates found in nature. (*Id.* at 16–26).

After the Preliminary Injunction Motion, the parties' entered into a partial stipulated injunction and agreement on expedited discovery and briefing for the Motion for Preliminary Injunction. (Doc. 23). Discovery commenced in earnest on May 22, 2025, with a response to Plaintiff's Motion originally due on July 11, 2025. (*Id.*). Since then, as evidenced by the record in these proceedings, the parties have engaged in significant amounts of discovery. Defendants eventually submitted a Response to the Motion for Preliminary Injunction on August 12, 2025, supported by the declaration of Defendant's expert Dr. Andrew Jones. (Docs. 52, 52-8). Plaintiff filed its Reply on September 5, 2025. (Doc. 57). Attached to Plaintiff's Reply was a declaration from Plaintiff's recently retained expert Dr. Jerry Troutman. (*See* Doc. 57-2).

Defendants then moved to strike portions of Plaintiff's Reply, arguing that it untimely asserted new arguments, offered a declaration from a new expert, and utilized previously undisclosed references. (Doc. 61 at 4). While Plaintiff opposes Defendant's Motion, claiming its Reply was responsive to Defendant's Response (*see* Doc. 73), Plaintiff's Reply undoubtedly contains newly raised arguments. For example, Plaintiff's Reply argues for the first time that the L-Citrulline powder in the Accused Products is a naturally occurring amino acid that does not infringe claim 62 of Patent '531. (Doc. 57 at 4). Plaintiff also argues that Defendant's claim 62 is invalid under 35 U.S.C. §§ 101, 112(b) "due to an improper Markush group." (*Id.* at 4–5). Under those same subsections, Plaintiff argues that claim 62 is invalid because it requires an isolated amino acid compound and a separate non-ester nitrate compound and such a formulation "cannot produce the desired effects." (*Id.* at 6–9). It is also noted that Plaintiff's Reply primarily responds to assertions by Defendant's expert rather than the counterarguments raised in Defendant's Response.

Generally, "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *U.S. ex rel.*

*Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000). However, these proceedings present circumstances where, after Plaintiff's initial Motion was filed, significant discovery occurred. Defendant had the benefit of having conducted discovery when filing its Response, but the same opportunity did not present itself to Plaintiff until it filed its Reply.

With these considerations in mind, in light of the substantial discovery between the parties, and to clarify the arguments Plaintiff advances in support of its requested preliminary injunction, the Court will deny Plaintiff's Motion for Preliminary Injunction without prejudice to re-file with information that has come out in discovery. Defendant then will have the opportunity to respond to a comprehensive preliminary injunction motion. The Court finds that filing new briefs is not overly burdensome to either party as much of the parties' prior work may be repurposed.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 20) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 61) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that, **within seven (7) days of this Order**, the parties are to meet and confer as to whether Plaintiff still intends to seek a preliminary injunction and whether the parties can agree to a stipulated preliminary injunction. The parties shall file a joint statement as to the results of their conferral efforts.

**IT IS FINALLY ORDERED** that, if a new motion for preliminary injunction is to be filed, the following schedule shall control:

- Plaintiff's Motion for Preliminary Injunction is due by November 21, 2025.
- Local Rules on briefing deadlines will govern Response and Reply deadlines. *See* LRCiv. 7.2.

Dated this 7th day of November, 2025.

Honorable Diane J. Humetewa
United States District Judge