Clinton E. Duke (*Admitted Pro Hac Vice*)
  clinton.duke@dentons.com
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone: (801) 415-3000

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| **Evolution Nutraceuticals Incorporated**, <br><br> Plaintiff, <br><br> v. <br><br> **ThermoLife International LLC**, <br><br> Defendant. | Civil No. CV-25-00461-PHX-DJH <br><br> **PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Oral Argument Requested <br><br> JURY TRIAL DEMANDED <br><br> Honorable Diane J. Humetewa |

**COMES NOW**, Plaintiff Evolution Neutraceuticals, Inc. d/b/a Cardio Miracle ("Plaintiff" and/or "Cardio Miracle"), pursuant to Rule 65 of the Federal Rules of Civil Procedure and the Court's November 7, 2025 Order, and respectfully moves the Court for an order preliminary enjoining Defendant Thermolife International, LLC ("Defendant" and/or "Thermolife") from attempting to request any Amazon takedowns against Cardio Miracle's dietary supplements relying U.S. Patent No. 8,455,531 (the "'531 Patent").

# TABLE OF CONTENTS

**PAGE**

MEMORANDUM IN SUPPORT ................................................................................ 1

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.     Legal Standards................................................................................... 2

    A.     The Patent Bargain ................................................................... 2

    B.     Patent Infringement Analysis .................................................... 3

    C.     Prosecution History Disclaimer ................................................ 4

    D.     Preliminary Injunction Standard ............................................... 5

II.    A Preliminary Injunction is Appropriate in This Case .......................... 6

    A.     Cardio Miracle is Likely to Succeed on Non-Infringement or Invalidity ............................................................................... 6

    B.     ThermoLife's Amazon Takedowns Cause Irreparable Harm ................... 12

    C.     The Equities Favor Preliminary Injunction................................ 13

    D.     Public Interest Favors a Preliminary Injunction ........................ 13

III.   No Bond Should Be Necessary in This Case ........................................ 14

IV.    Conclusion ......................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................. 7, 14

*Amazon.com Inc. v. Barnsandnobles.com Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) .........................11

*Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313 (Fed. Cir. 2003).........................8, 11

*Ass'n for Molecular Pathology v. Myriad Genetics Inc.*, 569 U.S. 576 (2013) .......................... 12

*Aylus Networks Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017) ................................. 5

*Beyond Blond Productions LLC v. Heldman*, 479 F.Supp.3d 874 (C.D. Cal. 2020).............. 16, 17

*Billups-Rothenberg Inc. v. Associated Reg'l & Univ. Pathologists Inc.*, 642 F.3d 1031 (Fed. Cir. 2011).........................................................................................11

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989). ......................................... 3

*BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19- 60505-CIV-SMITH, 2021 WL 2946170 (S.D. Fla. July 14, 2021)................................................................................. 2

*Brooktree Corp. v. Advanced Micro Devices, Inc.* 977 F.2d 1555 (Fed. Cir. 1991) ................... 13

*Chalk v. United States Dist. Court Cent. Dist.,* 840 F.2d 701 (9th Cir. 1988) ............................. 15

*Chimie v. PPG Indus. Inc.*, 402 F.3d 1371 (Fed. Cir. 2005) ............................................... 4, 5

*ChromaDex Inc. v. Elysium Health Inc.*, 59 F.4th 1280 (Fed. Cir. 2023) ................................... 12

*Earth Island Inst. v. Carlton*, 626 F.3d 462 (9th Cir. 2010)......................................................... 15

*Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285 (Fed. Cir. 2007). ....................................... 4

*In re Harnisch*, 631 F.2d 716 (CCPA 1980).................................................................................. 14

*In re ThermoLife Int'l LLC*, 796 F. App'x 726 (Fed. Cir. 2020)..................................................... 9

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24 (2d Cir. 1978) .................. 14

*Lifestream Diagnostics, Inc. v. Polymer Tech. Sys., Inc.*, 109 F. App'x 411 (Fed. Cir. 2004) ........................................................................................................... 5, 6

*Lipocine Inc. v. Clarus Ther., Inc.*, 541 F.Supp.3d 435 (D. Del. 2021) ...................................... 13

*Los Angeles Mem. Coliseum Comm'n v. National Football League,* 634 F.2d 1197 (9th Cir. 1980); ........................................................................................................... 6

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996)......................................................................................................... 4

*Mechanix Wear LLC v. Branson*, 2:24-cv-03090-RGK-AJR, 2024 U.S. Dist. LEXIS 102633 (C.D. Cal. Apr. 23, 2024) ......................................................................... 7

*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F.Supp.3d 866 (C.D. Cal. 2021); ................................................................................................................. 1, 14, 16

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014) .................................. 10

*Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ............................................ 5

*Overstreet v. Lucid USA, Inc.,* CV-24-01356-PHX-DJH (D. Ariz. Sep. 13, 2024) ............... 15, 16

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). ................................................ 4

*Pure Wafer Inc. v. City of Prescott*, 275 F.Supp.3d 1173 (D. Ariz. 2017)................................... 16

*Raytheon Co. v. Roper Corp.*, 724 F.2d 951 (Fed. Cir. 1983)...................................................... 13

*Seachange Intern. Inc. v. C-COR Inc.*, 413 F.3d 1361, 75 U.S.P.Q.2d 1385 (Fed. Cir. 2005) ........................................................................................................................... 5

*Stensrud Inc. et al. v. Unknown Parties,* No. CV-24-00334-PHX-DJH, (D.Ariz. Feb. 29, 2024) ........................................................................................................................... 6

*ThermoLife Int'l, LLC v. GNC Corp.,* 922 F.3d 1347 (Fed. Cir. 2019).......................................... 2

*Thermolife Int'l, LLC v. Human Power of N Co.* No. 6-21- CV-00144-ADA, 2021 WL 6303232 (W.D. Tex. Dec. 21, 2021) ................................................................................. 2

**Statutes**

35 U.S.C. § 102......................................................................................................................... 10

iii

## MEMORANDUM IN SUPPORT

## INTRODUCTION

"Patent troll" can be a controversial, if not offensive, term for an entity whose primary business is threatening or engaging in patent litigation. More politically correct terms for such an entity include "patent holding company" (PHC), "patent monetization entity" (PME), "patent assertion entity" (PAE), and "non-practicing entity" (NPE). While people may disagree on how to strictly define "patent troll," it is a commonly used term in patent litigation because it is colorful and expressive. "Patent troll" evokes the image of an ugly beast demanding a toll, usually under threat, in order to cross a bridge that it does not own. While ThermoLife may take issue with parts of this image, such as whether the troll is ugly or whether it owns the bridge, it cannot be argued that ThermoLife's primary business is asserting patents, many of which have been compromised, in order to extract license fees.

Defendant Thermolife has an established reputation as a less than upright litigant, an unfair exploiter of the Amazon takedown processes, in order to obtain extrajudicial injunctions, with little or no oversight, to prevent businesses from accessing what courts have identified as a "make-or-break sales platform in the current e-commerce environment." *See Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F.Supp.3d 866, 879 (C.D. Cal. 2021); *ThermoLife Int'l, LLC v. GNC Corp.,* 922 F.3d 1347, 1355 (Fed. Cir. 2019) (ThermoLife and counsel brought "frivolous claims," and their

_8599864.1

"motivation was seemingly to extract nuisance-value settlements"); *BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19- 60505-CIV-SMITH, 2021 WL 2946170, at *2 (S.D. Fla. July 14, 2021) (adopting magistrate judge's report and recommendation and sanctioning ThermoLife where its owner, Ron Kramer, "committed a fraud upon the Court when [he] knowingly fabricated evidence to advance his case and repeatedly attempted to obstruct discovery of that fraud"); *Thermolife Int'l, LLC v. Human Power of N Co.* No. 6-21- CV-00144-ADA, 2021 WL 6303232, at *1 (W.D. Tex. Dec. 21, 2021) ("ThermoLife shall refrain from taking any action to further pursue evaluation through Amazon's Patent Evaluation Process any of the patents at issue"). It appears that Thermolife has been involved in 161 patent cases and has a "win rate" of 0.0%, meaning that it has "lost" or settled every case. (Dkt. 1-3).

With this perfect loss rate, ThermoLife certainly does not keep the lights on by succeeding on the merits of its infringement and validity claims. It does, however, seem to be thriving on those settlement agreements. With that extraordinary number of patent cases and absolutely no wins on the merits, that image of a troll demanding a toll to cross a bridge it does not own seems quite appropriate.

## **ARGUMENT**

### I.    **Legal Standards**

#### A.    **The Patent Bargain**

"The federal patent system thus embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150-151 (1989). Creators receive a temporary monopoly over their new and useful inventions in exchange for fully explaining them and dedicating them to the public after the term of the patent.

On the other hand, allowing entities to exercise monopoly powers over technology that is not new stifles innovation and commerce and is contrary to the constitutional mandate to "promote the Progress of Science and Useful Arts." U.S. Constitution, Article I, Section 8, Clause 8. Accordingly, it is the duty of the United States Patent and Trademark Office (USPTO) and of the Federal Courts to ensure that the power of the United States government is not used to enforce these state created monopolies beyond the limits of the patent bargain.

### B.    Patent Infringement Analysis

"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) Claim construction is an issue of law for courts to decide. *Id.* at 970–71. Courts give patent claim terms "their ordinary and customary meaning," which is "the meaning

<center>3</center>

that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). However, the Court must consider the "prosecution history," the record of the negotiations between the inventor and the USPTO, so that "claims are not construed in one way in order to obtain their allowance and in a different way against accused infringers." *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (internal quotations omitted).

### C.     Prosecution History Disclaimer

A "patentee is held to what he declares during the prosecution of his patent." *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007). This applies to statements made during reexamination. *Aylus Networks Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) The Federal Circuit has "adopted that doctrine as a fundamental precept in [its] claim construction jurisprudence." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "Accordingly, where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Chimie v. PPG*, 402 F.3d at 1384 (Fed. Cir. 2005).

The focus of disclaimer is on what the *applicant* argues. *Seachange Intern. Inc. v. C-COR Inc.*, 413 F.3d 1361, 1374, 75 U.S.P.Q.2d 1385, 1393 (Fed. Cir. 2005) ("An applicant's argument made during prosecution may lead to a disavowal of claim scope even if the Examiner did not rely on the argument."). A patent applicant's statements to the

**4**

USPTO are limiting regardless of whether the USPTO relied upon those statements and regardless of whether the USPTO rejected the patent owner's arguments. *Lifestream Diagnostics, Inc. v. Polymer Tech. Sys., Inc.*, 109 F. App'x 411, 414 (Fed. Cir. 2004) ("[R]eliance is not a necessary element for argument-based estoppel to apply in claim construction. Regardless of the examiner's motives for rejecting the patent applicant's arguments, arguments made during prosecution shed light on what the applicant meant by its various terms. . .. [A]rguments deliberately and repeatedly advanced by the patent applicant in regard to the scope of a claim term during prosecution may be used for purposes of claim construction even though the Patent Office rejected the arguments." (internal quotations and citations omitted) (emphasis added).

### D.    Preliminary Injunction Standard

To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent injunctive relief, (3) the equities weigh in the plaintiff's favor, and (4) the public interest favors injunctive relief. *Id.* at 20. The movant carries the burden of proof on each element of the test. *See Los Angeles Mem. Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1203 (9th Cir. 1980); *Stensrud Inc. et al. v. Unknown Parties,* No. CV-24-00334-PHX-DJH, **3-4 (D.Ariz. Feb. 29, 2024) (Humetewa, J.). The Ninth Circuit applies a "sliding scale" approach to the review of a request for a temporary restraining order or one for a preliminary injunction. *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127,

1131—1132 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id.* Likewise, a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## II.    A Preliminary Injunction is Appropriate in This Case

The purpose of a preliminary injunction is "to preserve the status quo pending a judgment on the merits." *See Mechanix Wear LLC v. Branson*, 2:24-cv-03090-RGK-AJR, 2024 U.S. Dist. LEXIS 102633, at *6 (C.D. Cal. Apr. 23, 2024). Cardio Miracle respectfully requests that the Court maintain the status quo by enjoining ThermoLife from enforcing the '531 patent through Amazon before the Court can consider validity and infringement.

### A.    Cardio Miracle is Likely to Succeed on Non-Infringement or Invalidity

Cardio Miracle can succeed on the merits of this case by showing either non-infringement or invalidity of claim 62 of the '531 patent. Not only is it likely that Cardio Miracle will succeed on both of these issues, but it is impossible for ThermoLife to succeed on both. It is black letter law that patent claims must be construed the same (i.e., have the same scope) for infringement and for invalidity. *Amgen Inc. v. Hoechst Marion Roussel*

**6**

*Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement.").

Cardio Miracle maintains that ThermoLife's Amazon takedown applications and counterclaims were filed in bad faith as ThermoLife must know that its asserted claims cannot be valid and still infringed by products with de minimums amounts of nitrate. While these bad faith litigation tactics are relevant to counts three through seven in Cardio Miracle's Complaint, they are not relevant to counts one and two for non-infringement and invalidity. (Dkt. 1 at 16-26).

### 1. Claim 62 of the '531 Patent is Very Limited

Claim 62 states:

> A solid supplement formulation comprising:
> at least one <u>non-ester nitrate compound</u>; and
> at least one <u>isolated amino acid compound</u> selected from the group consisting of Agmatine, Beta Alanine, Citrulline, L-Histidine, Norvaline, Ornithine, Aspartic Acid, Cysteine, Glycine, Lysine, Methionine, Praline, Tyrosine, and Phenylalanine, wherein the at least one isolated amino acid compound is a separate compound than the at least one non-ester nitrate compound.
>
> (Dkt. 1-1)

 Because the '531 patent, and other patents in its family, have popped out from under the bridge many times, their validity has been attacked several times.[1] In response,

---

[1] The '531 Patent is a continuation-in-part application that stems from U.S. Patent number 7,777,074—which was held invalid by the Federal Circuit in 2020. *In re ThermoLife Int'l LLC*, 796 F. App'x 726, 735 (Fed. Cir. 2020) (holding that Thermolife's

_8599864.1

ThermoLife has repeatedly represented to the USPTO that its claims only cover nitrates in a "supplementary amount," and not nitrates in a "de minimis" amount. (*See* Dkt. 1-6, 1-7.) ThermoLife argued that a "supplementary amount" of nitrate would be more than 20-30 mg ingested from eating a meal and certainly more than the 10 mg ingested from drinking water. (Dkt. 1-6 at 9-12, 30-37.) ThermoLife also hired John Lundberg to argue on its behalf that a supplementary or effective amount of nitrate would need to be more than is present in a single meal, or more than 20-30 mg or nitrate. (Dkt. 1-7 at ¶¶ 3-6.) He also argued that saliva contains enough nitrates that "the 'background' amount entering the body is already around 6-12 mg nitrate a day and that naturally occurring foods such as lettuce or beetroot can increase nitrate exposure significantly beyond that. (Dkt. 1-7 at ¶¶ 8-10.)

Because ThermoLife cannot interpret its claims one way to get them issued from the USPTO and another way to assert infringement, claim 62 of the '531 patent only covers products with a <u>non-ester nitrate compound</u> and an <u>isolated amino acid compound</u> that have a "supplementary amount" or more than 20-30 mg of nitrates. (Dkt. 1 at ¶¶35-74; Dkt. 1-6, 1-7).

*2.  The '531 Patent is Not Infringed by Cardio Miracle*

---

claim directed to creatine nitrate was invalid as anticipated by the prior art).  The '531 Patent has been through two ex parte reexaminations at the U.S. PTO, during each of which, the claims of the '531 Patent were significantly amended in an attempt to avoid being found invalid.

_8599864.1

Cardio Miracle had each of its accused products tested for nitrates by SUMMIT NUTRITIONAL LABRATORIES ("SNL") to confirm that they did not include a "supplementary amount" of nitrates. SNL's Certificate of Analysis showed that Cardio Miracle's products only include 3.95 mg of nitrates in a 10 g serving. (Dkt. 1-9). Because this is significantly below the 20-30 mg "supplementary amount," Cardio Miracle's products cannot infringe the '531 patent.

Additionally, it should be noted that ThermoLife has the burden of proving infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014). ThermoLife must, therefore, prove that the accused products not only include a supplementary amount of nitrates, but that they include a <u>non-ester nitrate compound</u> and an <u>isolated amino acid compound</u>. Because ThermoLife has presented no evidence of this, it cannot show infringement.

> 3. *The '531 Patent is Not Valid if a "Supplementary Amount" of Nitrates is Not Required*

If the '531 patent were construed to cover products with only trace amounts of nitrates, it would necessarily be invalid. Patent claims must be construed the same (i.e., have the same scope) for infringement and for invalidity. *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement.") "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement."

*Amazon.com Inc. v. Barnsandnobles.com Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (internal citations omitted).

First, without a "supplementary amount" of nitrates, the '531 patent would cover a number of prior art references such as those considered in the reexamination proceedings. A "patent claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference. 35 U.S.C. § 102." *Billups-Rothenberg Inc. v. Associated Reg'l & Univ. Pathologists Inc.*, 642 F.3d 1031, 1038 (Fed. Cir. 2011). There are numerous prior art references that disclose dietary supplements containing the amino acids recited in claim 62 of the '531 Patent, along with various compounds that contain nitrates, including thiamine mononitrate. These include International Publication WO 2005/115175 to Harris and U.S. Patent No. 5,576,351 to Yoshimura, which were the subject of one of the '531 patent's reexaminations. (Dkt. 1-6 at 106-145). They also include prior art dietary supplements such as those disclosed in U.S. Patent No. 7,025,996 to Miladinov and U.S. Patent Appl. Publication 2004/1817 to Giampapa. (Dkt. 20-5; Dkt. 20-6). Claim 62 of the '531 Patent would, therefore, be anticipated by any one of these prior art references.

Secondly, without a "supplementary amount" of nitrates and distinctly separate non-ester nitrate compounds and isolated amino acid compounds, the '531 patent would cover, in effect, the administration of only amino acids, which are ubiquitously found in nature. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for*

<div align="center">10</div>

*Molecular Pathology v. Myriad Genetics Inc.*, 569 U.S. 576, 589 (2013) (internal citations omitted). Based on the Supreme Court decisions in Myriad and Chakrabarty, "to be patentable, the claimed composition must have markedly different characteristics and have the potential for significant utility." *ChromaDex Inc. v. Elysium Health Inc.*, 59 F.4th 1280, 1284 (Fed. Cir. 2023) (internal citations, quotations omitted). "Markedly different characteristics" means characteristics different from the composition's naturally-occurring constituents. *Id.* The act of "isolating" naturally-occurring constituents is insufficient to create patent eligibility. *Id.* ("The act of isolating the NR compared to how NR naturally exists in milk is not sufficient, on its own, to confer patent eligibility.")

Without an effective or "supplementary amount" of nitrates, the '531 patent would not possess markedly different characteristics from amino acids and nitrates found in nature and the claims would therefore be invalid under §101. It would also be ineffective as a supplement. When "claimed subject matter is inoperable, the patent may indeed be invalid [under] the utility requirement of §101 and the enablement requirement of §112." *Brooktree Corp. v. Advanced Micro Devices, Inc.* 977 F.2d 1555, 1571 (Fed. Cir. 1991)*; Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956 (Fed. Cir. 1983) ("it is for the invention as claimed that enablement must clearly exist, and because the impossible cannot be enabled, a claim containing a limitation impossible to meet may be held invalid under §112."); *Lipocine Inc. v. Clarus Ther., Inc.*, 541 F.Supp.3d 435, 467 (D. Del. 2021) (claims

11

invalid given "nothing in the specification to indicate that compositions . . . achieve the []

parameters recited by the claims.").

### 4. Claim 62 is Invalid for Including an Improper Markush Group

Claim 62 specifies that the "isolated amino acid compound" is "selected from the

group consisting of" 14 amino acids. The Markush group is improper as the alternatives

(amino acids) are not members of the claimed group (amino acid compounds), just one

piece of how to make them. *In re Harnisch*, 631 F.2d 716, 719-20 (CCPA 1980); MPEP

¶2117.

For any one of the reasons above, Cardio Miracle is likely to succeed on the merits

of this case. Either it does not infringe the '531 patent or the '531 patent is invalid and

cannot be enforced. There is simply no way that TermoLife can show validity and

infringement without significant and impermissible inconsistencies in its arguments.

### B.    ThermoLife's Amazon Takedowns Cause Irreparable Harm

Given Cardio Miracle's strong likelihood of success, the burden on other elements

is lessened. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir.

2011). While Cardio Miracle's lost sales have been substantial, ThermoLife's takedowns

have compromised Cardio Miracle's standing, status, and goodwill which is irreparable

with money damages. (Dkt #1) ¶¶78-84, 104-111, 117-122. In de-listing cases, inability

to supply customers threatens "reputation" as a "dependable distributor." *John B. Hull,*

*Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 29 (2d Cir. 1978).

"[N]onquantifiable damages relating to lost business opportunities on Amazon [include]

product placement disadvantages such as losing [its] previously held first-page status."

*Medcursor Inc. v. Shenzen KLM Internet Trad'g Co.*, 543 F.Supp.3d 866, 878-79

(C.D.Cal. Jun. 10, 2021); Haglund Decl. ¶¶14-16.

### C. The Equities Favor Preliminary Injunction

As this Court recognized in *Overstreet v. Lucid USA, Inc.,* CV-24-01356-PHX-

DJH (D. Ariz. Sep. 13, 2024) (Humetewa, J.), "district courts must give serious

consideration to the balance of equities." *Id*. at *27, *quoting Earth Island Inst. v. Carlton*,

626 F.3d 462, 475 (9th Cir. 2010) (citation omitted). In doing so, courts must

consider "all of the competing interests at stake." *Id.* "The basic function of a preliminary

injunction is to preserve the status quo pending a determination of the action on the

merits." *Id., quoting Chalk v. United States Dist. Court Cent. Dist.,* 840 F.2d 701, 704

(9th Cir. 1988).

Removing Cardio Miracle's products from Amazon causes irreparable harm as

discussed above. Such removal before Cardio Miracle has a chance to respond to

unsupported allegations of infringement is even more egregious. (Dkt. 20-4). On the

other hand, ThermoLife stands to gain only a royalty infringement is found. Having

ThermoLife prove infringement and validity before it may collect a royalty is not a harm

and is equitable to all participants in the market.

### D. Public Interest Favors a Preliminary Injunction

<div align="center">13</div>

The last factor requires the Court to "consider whether there exists some critical public interest that would be injured by the grant of [injunctive] relief." *Overstreet v. Lucid USA, Inc.,* CV-24-01356-PHX-DJH at *27 (D. Ariz. Sep. 13, 2024) (Humetewa, J.), *quoting Pure Wafer Inc. v. City of Prescott*, 275 F.Supp.3d 1173, 1179 (D. Ariz. 2017) (citation omitted). Here, the public interest favors granting preliminary injunctive relief in this case. Given "the ubiquity of Amazon shopping to the general public, the public has an interest in a full and fair online marketplace." *Medcursor*, 543 F.Supp.3d, at 880.

The public interest is not served by allowing patent owners to remove products from the marketplace before due process allows the parties to argue infringement and validity. As the *Medcursor* court explained, "the public interest favors preventing a competitor from using a seemingly innocuous intellectual property rights-protection notice to effectively shut down a competitor's business." *Id.*

## III.    No Bond Should Be Necessary in This Case

"The district court retains discretion as to the amount of security required, if any." *Beyond Blond Productions LLC v. Heldman*, 479 F.Supp.3d 874, 888 (C.D. Cal. 2020) (internal citations and quotation omitted). The "bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Id.*, at 889.

14

_8599864.1

## IV.     Conclusion

For the foregoing reasons, Cardio Miracle respectfully requests that this motion be granted and TermoLife be enjoined from attempting to request any Amazon takedowns against Cardio Miracle's dietary supplements relying on U.S. Patent No. 8,455,531.


Dated: November 21, 2025

<div style="margin-left:40%">

Respectfully Submitted,

/s/  *Clinton E. Duke*

Clinton E. Duke
**DENTONS DURHAM JONES PINEGAR, P.C.**

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

</div>

15

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify that on or about **November 21, 2025**, I electronically

transmitted the attached document to the Clerk's Office using the U.S. District Court for

the District of Arizona's Electronic Document Filing System (ECF), by which it was then

transmitted to at least the counsel for Defendant listed as counsel of record on ECF.


*/s/  Clinton E. Duke*

Clinton E. Duke
**DENTONS DURHAM JONES PINEGAR, P.C.**

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

**16**