Clinton E. Duke (*Admitted Pro Hac Vice*)
 clinton.duke@dentons.com
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone: (801) 415-3000

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Evolution Nutraceuticals Incorporated**, <br><br> Plaintiff, <br><br> v. <br><br> **ThermoLife International LLC**, <br><br> Defendant. | Civil No. CV-25-00461-PHX-DJH <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Oral Argument Requested <br><br> JURY TRIAL DEMANDED <br><br> Honorable Diane J. Humetewa |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

    I.    ThermoLife Cannot Have its Nitrate Rich Cake and Eat It Too ............................. 1

    II.   Disclaimer During Prosecution History Directly Affects ThermoLife's Claims ................................................................................................................. 2

        A.    ThermoLife Has Publicly Declared What Its Claims Mean ....................... 2

        B.    The USPTO's Response Is Not as Relevant as ThermoLife's Arguments ................................................................................................... 3

    III.  Bad Faith is Not Relevant to the Instant Motion ..................................................... 5

        A.    Bad Faith is Not an Element of Non-Infringement or Invalidity ................ 5

        B.    Free Speech is Not Implicated Here ............................................................. 6

    IV.  The Preliminary Injunction Factors are Satisfied .................................................... 7

        A.    Cardio Miracle is Likely to Succeed on the Merits of Non-Infringement or Invalidity ............................................................................ 7

        B.    The Remaining Factors are Met ................................................................. 11

    V.   Conclusion .............................................................................................................. 11

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324 (Fed. Cir. 2011) .............................. 4

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003) .............................. 2

*Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874 (C.D. Cal. 2020) ........................... 6

*ChromaDex, Inc. v. Elysium Health, Inc.*, 59 F.4th 1280 (Fed. Cir. 2023) ............................. 10, 11

*GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d 1369 (Fed. Cir. 2007) ............................................ 6

*Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261 (Fed. Cir. 2012) ............................................. 4

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951 (Fed. Cir. 2000) ............. 2, 3

*Lifestream Diagnostics, Inc. v. Polymer Tech. Sys., Inc.*, 109 F. App'x 411 (Fed. Cir. 2004) ................................................................................................................................................... 3

*Lite-Netics, LLC v. Nu Tsai Cap. LLC,* 60 F.4th 1335 (Fed. Cir. 2023) ......................................... 6

*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866 (C.D. Cal. 2021) .................................................................................................................................................. 6

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191 (2014) ..................................... 10

*Poly-America, L.P. v. Api Industries, Inc.*, 839 F.3d 1131 (Fed. Cir. 2016) ................................. 9

*Thermolife Int'l, LLC v. Human Power Of N Company,* 2021 U.S. Dist. LEXIS 249770 / 2021 WL 6303232 (W.D. Tex. Dec. 21, 2021) ........................................................................ 7

*Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551 (Fed. Cir. 1987) ..................................... 10

*Uship Intell. Properties, LLC v. United States*, 714 F.3d 1311 (Fed. Cir. 2013) .......................... 4

# INTRODUCTION

Since the Court issued its November 7, 2025 Order (Dkt. 78), Cardio Miracle has retained new counsel. Although Cardio Miracle continues to believe that its arguments have merit and should be considered in this litigation. However, given the Court's order and significant amount of time that has past, Cardio Miracle has indeed narrowed the scope of its renewed motion for preliminary injunction. There is nothing "egregious" about a newly hired counsel narrowing the focus of a renewed motion. It is, rather, respectful of the Court's time and docket. One would think that ThermoLife would welcome this narrowed scope rather than express what seems like outrage. However, if ThermoLife's overarching tactic is to multiply litigation in order to increase the nuisance value of its claims, perhaps it would prefer to avoid focusing on the core issue that its patent cannot be both valid and infringed under a single claim interpretation.

# ARGUMENT

## I.  ThermoLife Cannot Have its Nitrate Rich Cake and Eat It Too

Conspicuously absent from ThermoLife's opposition brief is an answer to the fundamental question in this case: does claim 62 of the '531 patent require more than a trace of nitrates? The answer has to be the same during prosecution before the USPTO and during litigation before this Court. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement."). ThermoLife declines to provide a straight answer because it wants to give opposite answers to the USPTO and this Court.

1

During prosecution, initial examination and reexamination, ThermoLife repeatedly argued that its claims required a significant amount in order to get its claims allowed over prior art references with smaller amounts of nitrates. Whether or not it decided to include a specific phrase like "supplementary amount" in its claims, it clearly stated what its claims, as they were examined, *mean*. In expressly and publicly stating what its claims *mean*, it told the public that it was not claiming small amounts of nitrates. In order to get its claims allowed, ThermoLife took large bites out of its claim scope. It can't have these bites back to enforce a broader claim scope. Because ThermoLife has already eaten its cake, it cannot still have it.

II.     **Disclaimer During Prosecution History Directly Affects ThermoLife's Claims**

    A.     **ThermoLife Has Publicly Declared What Its Claims Mean**

Cardio Miracle does not argue that ThermoLife added a "silent requirement" to its claim. (Dkt. 84 at 8). The requirement for a supplementary or non-de minimus amount of nitrate was clarified loudly and repeatedly to the patent office and to the public. *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention.") The public notice function of the prosecution history cannot be ignored when a patentee attempts to enforce claims it discussed with the patent office. Hushing statements made to the patent office critically compromises the patent

2

bargain and invites abuse and bad faith. *Id.* ("Were we to accept [patentee's] position, we would undercut the public's reliance on a statement that was in the public record and upon which reasonable competitors formed their business strategies.") Cardio Miracle discussed this in detail in its opening brief. (Dkt. 83 at 4-5).

### B. The USPTO's Response Is Not as Relevant as ThermoLife's Arguments

Cardio Miracle certainly addressed ThermoLife's excuse that the patent office rejected its arguments. In its opening brief, Cardio Miracle specifically argued that an "applicant's statements to the USPTO are limiting regardless of whether the USPTO relied upon those statements and regardless of whether the USPTO rejected the patent owner's arguments." This is by no means a controversial argument. *See Lifestream Diagnostics, Inc. v. Polymer Tech. Sys., Inc.*, 109 F. App'x 411, 414 (Fed. Cir. 2004) ("[R]eliance is not a necessary element for argument-based estoppel to apply in claim construction. Regardless of the examiner's motives for rejecting the patent applicant's arguments, arguments made during prosecution shed light on what the applicant meant by its various terms. . . . [A]rguments deliberately and repeatedly advanced by the patent applicant in regard to the scope of a claim term during prosecution may be used for purposes of claim construction even though the Patent Office rejected the arguments internal quotations and citations omitted) (emphasis added); *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (holding prosecution disclaimer applied even where "statement was unnecessary to overcome the reference and that the examiner explicitly

3

disagreed with it"); *Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261, 1271 (Fed. Cir. 2012) ("It does not matter whether the examiner or the Board adopted a certain argument for allowance; the sole question is whether the argument was made."); *Uship Intell. Properties, LLC v. United States*, 714 F.3d 1311, 1315 (Fed. Cir. 2013) ("The analysis focuses on what the applicant said, not on whether the representation was necessary or persuasive . . . .").

ThermoLife then argues that it abandoned its arguments regarding nitrate amount. (Dkt. 84 at 9). This is not true. The USPTO stated that ThermoLife's argument was "not persuasive" on October 31, 2019 (Dkt. 52-20 at 9-10), but in a December 11, 2019 interview, ThermoLife again argued that "the compositions of the prior art contain very low levels of nitrate" and "the references each do not teach a composition comprising a supplemental amount of nitrate as contemplated in the specification of the '531 Patent" (Exhibit A at 3). Also, on January 31, 2020, ThermoLife submitted the Lundberg Declaration in which ThermoLife's expert argued that Harris and Yoshimura do not provide a "supplemental amount" of nitrate. (Dkt. 1-7 at 6).

Finally, it is not clear that the USPTO did not rely on ThermoLife's arguments. In its January 31, 2020 response to the examiner's rejections, ThermoLife amended several of its claims to require significant amounts of nitrate as it discussed with the examiner in the December 11, 2019 interview. (Dkt. 52-21 at 3-16). It also amended some of its claims to remove certain amino acids to traverse the Harris and Yoshimura references. (Dkt. 52-

4

21 at 18-19, 35-39). However, these deletions would not have overcome Harris and Yoshimuru alone. For example, Yoshimura discloses supplements that include a number of the amino acids that remain in claim 62, including lysine, histidine, ornithine, aspartic acid, cysteine, glycine, methionine, proline, tyrosine, and phenylalanine. (Dkt. 1-6 at 130-148). These deletions would need to be accompanied by ThermoLife's arguments that the prior art did not include a supplementary amount of nitrate.

By making these distinctions and clear disclaimers of scope on the record of the prosecution history, ThermoLife chose to eat its cake. It cannot allow to also have it today.

**III.    Bad Faith is Not Relevant to the Instant Motion**

Although Cardio Miracle has narrowed the scope of its renewed motion for preliminary injunction, ThermoLife cannot resist spending a very large chunk of its brief on this issue. While ThermoLife's "bad faith litigation tactics are relevant to counts three through seven in Cardio Miracle's Complaint, they are not relevant to counts one and two for non-infringement and invalidity." (Dkt. 83 at 7; Dkt. 1 at 16-26). ThermoLife is just setting up a straw man to knock down.

   **A.    Bad Faith is Not an Element of Non-Infringement or Invalidity**

Bad Faith is not a requirement for an injunction based upon a declaratory judgment of non-infringement or invalidity. "A declaratory judgment can . . . be used as a predicate to further relief, including an injunction." *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 880 n.2 (C.D. Cal. 2020) (granting injunction requiring retraction of Amazon copyright takedown notices without discussing bad faith);

5

*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 880 (C.D. Cal. 2021) (granting injunction requiring retraction of Amazon notices without discussing bad faith). The cases ThermoLife relies on to argue that bad faith is required are not applicable here. The injunction in *Lite-Netics, LLC v. Nu Tsai Cap. LLC,* 60 F.4th 1335 (Fed. Cir. 2023) was based on tortious- interference and defamation claims. *GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d 1369 (Fed. Cir. 2007), also involved a claim for tortious interference.

Cardio Miracle maintains that ThermoLife acted in bad faith by asserting patent claims that could only be infringed if its statements and arguments during prosecution history are completely ignored if not directly contradicted. However, Cardio Miracle will pursue these claims later in this litigation.

### B.   Free Speech is Not Implicated Here

This is not a case where ThermoLife is just simply informing a competitor or customers of its patent rights. Cardio Miracle is limiting its request to preventing ThermoLife from abusing Amazon's extrajudicial process to basically get an injunction against Cardio Life on the very patent that is before this Court. ThermoLife is again, just setting up a straw man to knock down by characterizing the requested injunction as a free speech issue.

In reality, ThermoLife has already been enjoined more than once by a federal court from engaging in the Amazon extrajudicial takedown process:

ThermoLife initiated this action in this Court, asserting the '968, '531, and '140 patents against HumanN, and previously pursued evaluation of the same patents through Amazon's Patent Evaluation Process. The Court granted HumanN's first emergency application of TRO and enjoined ThermoLife from pursuing the Amazon Patent Evaluation Process for those patents.

*Thermolife Int'l, LLC v. Human Power Of N Company,* 2021 U.S. Dist. LEXIS 249770 / 2021 WL 6303232, at *2 (W.D. Tex. Dec. 21, 2021).

Having been enjoined from pursuing an Amazon takedown on these three patents, ThermoLife attempted to have Amazon take down the accused products based on another, related patent. The defendant in that case moved for another temporary restraining order enjoining this behavior and was again successful. Judge Albright found that "good cause exists to temporarily restrain ThermoLife from pursing evaluation of the '813 patent through Amazon's Patent Evaluation Process." *Id.* Constitutional free speech is simply not implicated here.

## IV.  The Preliminary Injunction Factors are Satisfied

### A.  Cardio Miracle is Likely to Succeed on the Merits of Non-Infringement or Invalidity

For the reasons stated above and in Cardio Miracle's opening brief, there is simply no way that can be both valid and also infringed by the accused product. ThermoLife relies on two different and clearly inconsistent constructions of its claim in its arguments. If a

7

single construction or meaning of the claim is applied, there cannot be infringement of a valid claim. In order to remain valid, the claim must require a significant or "supplementary amount" of nitrates. If this is the case, the accused product would not infringe as discussed in Cardio Miracle's opening brief. In order to be infringed, the claim must allow for trace or de minimus amounts of nitrate. If this is the case, prior art references would read on and invalidate the claim. Because there is no tightrope between validity and infringement for ThermoLife to walk in this case, it resorts to grasping at straws.

### 1. Serving Size Matters

ThermoLife argues that one of the accused products includes a "supplementary amount" of nitrate at 374 mg. (Dkt. 84 at 11). This is only true if all of the nitrate in a *90 serving tub* are included. This is a ridiculous argument that exposes the shaky ground that ThermoLife stands on. Because a serving of the accused product clearly does not include a supplementary amount of nitrate, ThermoLife imagines that an end user would binge on dozens upon dozens of servings at a time. Such a far-fetched idea cannot invent infringement where none exists.

### 2. One Ingredient is "Rich in Heart-Healthy Nitrates"

ThermoLife then argues that Cardio Miracle advertises the accused products as "rich in heart-healthy nitrates." (Dkt. 84 at 11). Again, this is not a serious argument and further shows ThermoLife's desperation. It is not the accused products that are advertised as "rich in heart-healthy nitrates" as ThermoLife is well aware. In order to get this soundbite, one

needs to read to the very bottom of Exhibit A where it is stated that the accused products *include* "Organic Beet Root Powder – rich in heart-healthy nitrates". (Dkt. 84-2 at 3). This same block of bullet points notes that the accused products also include "Over 50 Nutrient-Dense Ingredients." The fact that one ingredient out of over 50 ingredients might be "rich in heart-healthy nitrates" certainly does not indicate that the mixture as a whole contains a "supplementary amount" of nitrate.

### 3. Claim Differentiation Will Not Save These Claims

Claim differentiation does not broaden claims beyond their meaning in light of the patent as a whole. More importantly, it cannot override clear statements of claim scope found in the specification and prosecution history. *See Poly-America, L.P. v. Api Industries, Inc.*, 839 F.3d 1131, (Fed. Cir. 2016). Again, it is ThermoLife's arguments during prosecution that are crucial here. Furthermore, as long as there is some amount of space between claims, they are differentiated. In this case, ThermoLife does not, and cannot, argue that "supplementary amount" is exactly equivalent to either "30.7 mg nitrate ion" or a "pharmaceutically effective amount of at least one nitrate salt compound." (Dkt. 84 at 12).

### 4. Impropoer Burden Shifting

To the extent that ThermoLife argues that Cardio Miracle has the burden to prove non-infringement, it is incorrect. There is no such burden shift in seeking preliminary relief in a case for declaratory judgment of non-infringement. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 193–94 (2014) (holding that when a plaintiff "seeks a

9

SL_8684333.1

declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee"); *Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987) ("The burden always is on the patentee to show infringement."). Cardio Miracle has met the standard by showing that ThermoLife is not likely to carry its burden on infringement of a valid patent. Because, as discussed above, there is no tightrope for ThermoLife to walk that can maintain infringement and validity, ThermoLife cannot carry its burden.

### 5. *We Do Not Need to Dance the Two Step*

The Fed. Cir. has said it is appropriate to apply the "markedly different characteristics" analysis to claims like this and NOT reach the Alice/Mayo two-step framework. *ChromaDex, Inc. v. Elysium Health, Inc.*, 59 F.4th 1280, 1285 (Fed. Cir. 2023) ("The inquiry could end here—the Supreme Court in *Myriad* relied on *Chakrabarty's* "markedly different characteristics" framework for analyzing whether the claimed compositions there were directed to a natural phenomenon; the Court never applied the Alice/Mayo two-step framework despite deciding the case after Mayo.") If the claims are broad enough to not be markedly different from eating meals including fruits and vegetables, they are not patentable and the Alice/Mayo analysis need not be considered. If the claim encompasses nothing more revolutionary than eating, it is certainly not new and useful. If the claims encompass compositions with ineffective quantities of nitrates, then they are pretty much just directed to amino acids, which are found abundantly in nature.

*ChromaDex, Inc. v. Elysium Health, Inc.*, 59 F.4th 1280, 1286 (Fed. Cir. 2023) ("And the act of isolating the NR by itself, no matter how difficult or brilliant it may have been (although the specification makes clear that it was conventional), similarly does not turn an otherwise patent-ineligible product of nature into a patentable invention.")

### 6. Claim 62 is Invalid for Including an Improper Markush Group

In a twist of tactics, the only time ThermoLife attempts to reference something outside of the actual claim language is to try to protect its Markush group in claim 62. (Dkt. 84 at 14). Again, this shows how ThermoLife cannot bring a consistent set of arguments that maintains the '531 patent's validity while showing infringement. If we must put on blinders to read claim 62 and ignore the intrinsic evidence, "amino acids" are not the same as "amino acid compounds." If we are to consider the intrinsic evidence, we must also consider ThermoLife's many arguments to the patent office.

**B.     The Remaining Factors are Met**

For the reasons stated in Cardio Miracles opening brief, the remaining three factors of irreparable harm, balance of equities, and public interest are clearly met and not reasonably disputed by ThermoLife.

**V.     Conclusion**

For the reasons stated above and in Cardio Miracle's opening brief, Cardio Miracle respectfully requests that this motion be granted and ThermoLife be enjoined from attempting to request any Amazon takedowns against Cardio Miracle's dietary supplements relying on U.S. Patent No. 8,455,531.

Dated: December 12, 2025

          Respectfully Submitted,

          /s/  Clinton E. Duke

          Clinton E. Duke
          **DENTONS DURHAM JONES PINEGAR, P.C.**

          *Attorney for Plaintiff Evolution Nutraceuticals Inc.*

**12**

# CERTIFICATE OF SERVICE

I, the undersigned, certify that on or about **December 12, 2025**, I electronically transmitted the attached document to the Clerk's Office using the U.S. District Court for the District of Arizona's Electronic Document Filing System (ECF), by which it was then transmitted to at least the counsel for Defendant listed as counsel of record on ECF.

                                                                   /s/ *Clinton E. Duke*

                                                                    Clinton E. Duke
                                                                    **DENTONS DURHAM JONES PINEGAR, P.C.**

                                                                    *Attorney for Plaintiff Evolution Nutraceuticals Inc.*