WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evolution Nutraceuticals Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>ThermoLife International LLC,<br><br>Defendant. | No. CV-25-00461-PHX-DJH<br><br>**ORDER** |

On May 21, 2025, Defendant ThermoLife International LLC ("Defendant") moved to dismiss Counts III–VII of Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6). (Doc. 24). Plaintiff Evolution Nutraceuticals Inc. ("Plaintiff") filed a Response in Opposition (Doc. 46), and Defendant filed a Reply. (Doc. 49).[1]

**I.    Background**

Plaintiff produces dietary supplement products to stimulate safe, sustained nitric oxide in the body's vasculature. (Doc. 1 at ¶ 21). Defendant is a raw material supplier for dietary supplements, holding multiple patents, including the one at issue here—U.S. Patent No. 8,455,531 ('531 Patent). (*Id.* at ¶¶ 25–26). The '531 Patent is directed to nitrate-containing amino acid compositions and their use in a human or animal for increasing bioabsorption of amino acids or vasodilative characteristics. (Doc. 1-1 at 1). While this case primarily arises from the parties' dispute as to whether the '531 Patent was infringed

---

[1] Plaintiff's Motion for Preliminary Injunction (Doc. 83), which seeks injunctive relief for claims not at issue in the Motion to Dismiss, is also pending before the Court and will be addressed by separate Order. The resolution of Defendant's Motion to Dismiss does not impact Plaintiff's Motion for Preliminary Injunction.

or is valid, the events preceding Plaintiff filing suit are relevant here.

Plaintiff has manufactured and sold its dietary supplements since 2013. (Doc. 1 at ¶ 21). These dietary supplement products are sold on a "variety of online platforms," including Amazon.com. (*Id.* at ¶ 23). On Amazon.com, the at-issue products were sold under the Amazon Standard Identification Numbers ("ASINs"): B071T51TWY, B0CWW3GD39, and B01H6BTRFO (the "Accused Products"). (*Id.*) Plaintiff claims that its Amazon sales accounted for roughly 20% of the Accused Products' total sales. (*Id.* at ¶ 23).

In October of 2024, Defendant filed one or more complaints ("Takedown Notices") with Amazon claiming that the Accused Products infringed on its patented nitrate and requesting that Amazon remove the Accused Products' listings. (*Id.* at ¶¶ 4–5). Amazon, consequently, sent Plaintiff Policy Violation Notices, and the Accused Products' listings were deactivated. (*Id.* at ¶¶ 4, 81). Plaintiff alleges that Defendant's Takedown Notices were made in bad faith because Defendant "failed to conduct any proper testing to confirm that Accused Supplemental Compositions comprise the required effective amount of nitrate and not de minimis amounts of nitrate, if any." (*Id.* at ¶ 5). Plaintiff further asserts that "[Defendant] could have no reasonable belief that the '531 Patent is both valid and infringed by the Accused Products." (*Id.* at ¶ 74).

Following the removal of the Accused Products, Plaintiff sent two non-infringement letters to Amazon and asked for the listings to be restored. (*Id.* at ¶¶ 31–32). When the attempts were unsuccessful, Plaintiff brought this action against Defendant on February 12, 2025. Plaintiff's claims include declaratory judgment of non-infringement of the '531 Patent, declaratory judgment of invalidity of the '531 Patent, violation of the Arizona Consumer Fraud Act ("ACFA"), trade libel, false or misleading representation and product disparagement under 15 U.S.C. § 1125, tortious interference, and bad faith infringement under the Arizona Patent Troll Prevention Act ("APTA"). (*Id.* at ¶¶ 88–155). Plaintiff claims that the removal of its products from Amazon has caused it lost sales, loss of customer goodwill, and damage to its rankings. (*See id.* at ¶¶ 78–84). Defendant now

moves to dismiss five of Plaintiff's tort claims, arguing that they each fail as a matter of law.

## II.     Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.   Discussion**

Defendant moves to dismiss Plaintiff's claims for unlawful practices under the ACFA, trade libel, false or misleading representation and product disparagement under 15 U.S.C. § 1125, tortious interference, and bad faith infringement under the APTA. (*See* Doc. 24 at ¶¶ 104–155).

**A.   Contradicted Allegations and Federal Preemption**

To begin, Defendant contends dismissal is warranted because the allegations of the Complaint contradict the asserted bases for Counts III through VII—namely, that Defendant allegedly failed to conduct testing prior to submitting takedown notices for the Accused Products to Amazon. (Doc. 24 at 10–12). Defendant also argues that Plaintiff's state law claims are preempted by federal patent law. (*Id.* at 10–14).

**1.   Failure to Test**

Defendant first argues that Plaintiff's Counts III through VII fail to state viable claims because they are all premised on the allegation that Defendant filed its Takedown Notices without first testing the Accused Products. Defendant asserts that this premise is contradicted by Plaintiff's own statements made in a letter to Amazon about the takedowns, which Plaintiff attached as an exhibit to its Complaint. (*Id.* at 5–7). "When exhibits are attached to a complaint, the exhibits are deemed part of the complaint for all purposes, including for purposes of determining the sufficiency of the claims." *Angelone v. Brown*, 2024 WL 4610558, *2 (E.D. Wash. 2024).

The Complaint, on several occasions, asserts that "[Defendant's] Takedown Notices were in bad faith and unjustified. The '531 Patent is not infringed because [Defendant] failed to conduct any proper testing to confirm that Accused Supplemental Compositions comprise the required effective amount of nitrate and not de minimis amounts of nitrate, if any." (Doc. 1 at ¶ 5; *see, e.g., id.* at ¶¶ 54, 106, 113, 152). Plaintiff's correspondence with Amazon, however, states: "[Defendant] submitted that [sic] Takedown Notices with full knowledge that *its own testing* of the Accused Products showed nitrate amounts that it had already argued before the U.S. PTO were de minimis and did not satisfy the nitrate

- 4 -

limitations of the '531 Patent." (Doc. 1-5 at 5) (emphasis added).

To the extent Plaintiff alleges that Defendant conducted no testing prior to submitting takedown notices to Amazon, the Court agrees with Defendant that the statements in Plaintiff's letter is at odds with those allegations. It accordingly need not credit any allegations that Defendant failed to test the Accused Products at all. *Angelone*, 2024 WL 4610558 at *2 ("If an exhibit attached to a complaint contradicts an assertion in the complaint and reveals information that prohibits recovery as a matter of law, the information provided in the exhibit trumps the allegation in the complaint."); *Bronson v. Green Tree Servicing, LLC*, 2009 WL 546159, *8 (E.D. Cal. 2009) ("When an exhibit contradicts facts alleged in the complaint, the facts in the exhibit take precedence.").

Plaintiff highlights that it alleged that Defendant "failed to conduct any *proper* testing" as opposed to no testing at all. (*See* Doc. 46 at 4; Doc. 1 at ¶ 5). However, this distinction is immaterial because Plaintiff's Exhibit says that Defendant had full knowledge, based on its testing, that the Accused Products were non-infringing. (*See* Doc. 1-5 at 5). So, whatever testing Defendant conducted was sufficient to provide it with the necessary knowledge about the Accused Products' infringement status.

That said, construing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff alleges sufficient alternative grounds for its claims. Notwithstanding any allegations of no testing or no "proper" testing of the Products, the Complaint states:

> [P]rior to submitting the Takedown Notices, [Defendant] knew that the claims of the '531 Patent are invalid if they are broad enough to read on a supplement merely containing amino acids and trace nitrate present from vegetables. As a result, [Defendant] could have no reasonable belief that the '531 Patent is both valid and infringed by the Accused Products. [Defendant's] Takedown Notices were therefore in bad faith and objectively baseless.

(Doc. 1 at ¶¶ 73–74). These allegations, taken as true, establish that Defendant knew the Accused Products did not infringe its '531 Patent yet still filed its Takedown Notices to Amazon. Indeed, similar claims in the Complaint reassert that Defendant knowingly submitted false claims of infringement against the Accused Product. (*See*, *e.g.*, *id.* at ¶¶ 114, 146). Plaintiff's assertions that Defendant knowingly raised false infringement

1  claims provide a basis for its Counts III through VII and incidentally align with its
2  communication with Amazon. (Doc. 1-5 at 5 ("[Defendant] submitted that [sic] Takedown
3  Notices with full knowledge that *its own testing* of the Accused Products…did not satisfy
4  the nitrate limitations of the '531 Patent.").  As a result, the Court declines to dismiss
5  Plaintiff's claims on the grounds that the Complaint cannot assert Defendant failed to
6  conduct testing before submitting its takedown notices to Amazon.

### 2.  Federal Preemption of State Law Claims

Defendant also argues that Plaintiff's state law claims are preempted by federal patent law. (Doc. 24 at 12–14).

"Federal Circuit law governs whether federal patent law preempts a state law claim." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005). And the Federal Circuit has held that federal patent law preempts state tort law where the state tort is based on "conduct that is protected or governed by federal patent law." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karayan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999). "[I]n a case involving a patentholder's conduct in…publicizing its patent, if the plaintiff were to fail to allege that the defendant patentholder was guilty of…bad faith in the publication of a patent, then the complaint would be dismissed" on preemption grounds. *Id.* at 1336. Federal patent law, similarly, "preempt[s] state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). As a result, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999).

Defendant asserts that Plaintiff cannot sufficiently allege that the Takedown Notices were made in bad faith because Defendant tested the accused products prior to submitting them. But Plaintiff has alleged the falsity of Defendant's Takedown Notices by alleging

that Defendant submitted its Takedown Notices with the knowledge that the Accused Products did not actually infringe its patent. (Doc. 1 at ¶¶ 73–74). Moreover, Plaintiff states that Defendant's goal in submitting its Notices was to force Plaintiff to pay Defendant "undeserved 'royalty' payments," buttressing the inference of bad faith. (*Id.* at ¶ 7). Presently, Plaintiff has demonstrated the requisite bad faith to avoid federal preemption.

### B. California Litigation Privilege

Defendant next claims that the California litigation privilege "protects the Amazon Takedown [N]otices from Arizona tort law because they were drafted and sent from California." (Doc. 24 at 14). The Court does not reach the substance of Defendant's argument because it would require the Court to consider information outside of the Complaint. Nowhere in the Complaint does it establish where Defendant drafted and sent the Notices from, and, on a motion to dismiss, review is limited to the contents of the complaint. *See Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998).

### C. Sufficiency of Plaintiff's Claims

Notwithstanding its foregoing arguments, Defendant argues that each of Plaintiff's claims fails as a matter of law. (Doc. 24 at 14). The Court will examine each claim in turn.

#### 1. ACFA Claim

Defendant argues that Plaintiff failed to allege essential elements of an ACFA claim. (*Id.* at 15). Specifically, Defendant argues that the Complaint does not assert that Plaintiff was a consumer under the ACFA. (*Id.* at 15–16). The Court agrees.

The ACFA widely prohibits fraudulent, deceptive, or misleading conduct "in connection with the sale or advertisement of any merchandise…." A.R.S. § 44-1522(A). "The elements of a private cause of action for statutory fraud are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979).

A private right of action under the ACFA was recognized in *Sellinger v. Freeway*

*Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974).  Although not explicitly accounted for in the ACFA, the court determined that the a private cause of action was granted by § 44-1533(B), which reads "[t]he provisions of this article shall not bar any claim against any person who has acquired any monies or property, real or personal, by means of any practice declared to be unlawful by this article." *Id.*; A.R.S. § 44-1533(B).  The court reasoned that this section allowed a person damaged by unlawful acts to bring a claim based on those acts, and it noted "similar language in a consumer fraud act is sufficient recognition that a cause of action has been created in favor of the consumer." *Id.* (citing *Rice v. Snarlin, Inc.*, 266 N.E.2d 183 (Ill. App. Ct. 1970)).  A private right of action was recognized for those who fell within the class that the statute was intended to protect— namely, consumers.  *Id.*

Plaintiff contends that a "direct merchant-consumer transaction" is not required to state a claim under the ACFA. (Doc. 11).  *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016) ("[T]he statute does not expressly require a direct merchant-consumer transaction.").  Be that as it may, *Watts* does not stand for the premise that a plaintiff need not be a consumer.  *Watts* involved a defendant pharmaceuticals manufacturer and a plaintiff patient. *Watts*, 365 P.3d at 953.  While the court recognized that an ACFA claim could still be brought even without a direct transaction between a drug manufacturer and a patient, the *Watts* plaintiff was still a consumer of the defendant's pharmaceuticals.  *See id.* at 947-48.  Ultimately, to bring a claim of consumer fraud, Plaintiff must be a consumer. *See*, *e.g.*, *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) ("The Consumer Fraud Act provides an injured *consumer* with an implied private right of action against the violator of the act.") (emphasis added).  In other words, a consumer protection statute is intended to protect consumers.

In its Complaint, Plaintiff does not allege that it is a consumer, nor can this be inferred from the four corners of the pleading. (*See generally* Doc. 1).  Even more so, as the manufacturer of the Accused Products, Plaintiff is empirically not bringing this suit as an injured consumer and does not fall within the class that the ACFA is intended to protect.

1  No possible amendment could alter this reality. Accordingly, Plaintiff's ACFA claim will
2  be dismissed with prejudice.

### 2. Trade Libel

Defendant also contends Plaintiff's trade libel claim fails as it is based on an unactionable opinion and the alleged statements do not concern the quality of Plaintiff's Products. (Doc. 24 at 12–14).

Under Arizona law, "trade libel involves 'the intentional publication of an injurious falsehood disparaging the quality of another's property with resulting pecuniary loss.'" *Vazirani v. Annexus Distributors AZ, LLC*, 2017 WL 443529, *10 (Ariz. Ct. App. 2017) (quoting *Gee v. Pima Cnty.*, 612 P.2d 1079, 1079 (Ariz. Ct. App. 1980)); *see also ZombieBox Intl. Inc. v. Generac Power Sys. Inc.*, 721 F. Supp. 3d 798, 804 (D. Ariz. 2024) (The elements of a trade libel claim in Arizona are: (1) intentional publication; (2) of an injurious falsehood; (3) disparaging the quality of another's property; (4) resulting in pecuniary loss.").

Here, Plaintiff's trade libel claim is premised upon Defendant's Takedown Notices sent to Amazon. Plaintiff asserts that "[Defendant] communicated a falsehood to third-party Amazon when it submitted the Takedown Notices of infringement because the '531 Patent is not infringed by the Accused Products and [Defendant] did not conduct any due diligence to test the Accused Product to show the '531 Patent was in fact infringed at the time it submitted its Takedown Notices." (Doc. 1 at ¶ 113). It additionally alleges that Defendant "knew of its prior statements and expert declaration submitted to the USPTO, admitting that the presence of no or de minimis nitrates at the level found in the Accused Products, did not satisfy the nitrate limitations for purposes of alleged infringement." (*Id.* at ¶ 114). Nonetheless, "[Defendant's] Takedown Notices referred to [Plaintiff] and its products and clearly derogated those products by stating that the products infringe and should be delisted from Amazon, when those products, in fact, do not infringe." (*Id.* at ¶ 115). Plaintiff claims that this falsehood caused it substantial damages. (*See id.* at ¶¶ 117–121).

**a.      Statement of Opinion**

First, Defendant argues that its statements to Amazon that the Accused Products infringed Defendant's Patent are opinions, which are not actionable as trade libel. (Doc. 24 at 12–13).  In support of its argument, Defendant cites several Ninth Circuit cases that establish that claims of intellectual property ("IP") infringement are not facts until proven in court. *See*, *e.g.*, *Trevari Media, LLC v. Colasse*, 758 F. Supp. 3d 1175, 1182 (C.D. Cal. 2024) ("Given the legal complexity in determining IP validity and infringement…the court finds the validity or infringement of IP only becomes a provable 'fact' when a final, unappealable decision has been rendered."); *HGCI, Inc. v. Luxx Lighting, Inc.*, 2020 WL 5913851, *4 (C.D. Cal. 2020) ("The Email stated that [plaintiff] 'believe[d] [defendant] infringed on our patents for our optics, which is why we're currently in this situation.' The Court finds that this statement is a non-actionable opinion[.]") (internal citations omitted). Although Defendant only provides authority premised on California law, it notes that California's definition of trade libel claim is substantially similar to Arizona's. *Nichols v. Great Am. Ins. Companies*, 215 Cal. Rptr. 416, 419 (Cal. App. 3d Dist. 1985) (defining trade libel as "an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff").

Defendant's authority is not altogether unpersuasive, and no Arizona court has opined on the ability of IP infringement statements to support a trade libel or any related claim.  However, concluding that Defendant's statements were opinions is premature.  At least regarding defamation, it has been established that "[w]hile statements cast as subjective beliefs are generally insulated from defamation liability, statements of opinion are actionable when they imply a false assertion of fact." *Takieh v. O'Meara*, 497 P.3d 1000, 1006 (Ariz. Ct. App. 2021) (citation omitted).  Because the Court presently does not have the benefit of seeing Defendant's statements to Amazon, it is unable to ascertain whether the statements constitute facts or opinions.  The Court will not go so far as to say that every assertion of IP infringement is a non-actionable opinion and therefore will not dismiss Plaintiff's trade libel claim on this basis.

### b. Quality of Product

Defendant additionally argues that Plaintiff's trade libel claim fails because it does not allege that Defendant disparaged the quality of the Accused Products. Plaintiff disagrees and says that "it successfully alleges the disappearance of Cardio Miracle's listings (replaced by derogatory insinuation that the products were a "dog"), sudden shutdown of its subscription plan, and plunge in Amazon rankings and reputation." (Doc. 46 at 13).[2] While Plaintiff alleges the intentional publication of an injurious falsehood resulting in damages, the falsehood alleged does not disparage the "quality" of its products. *See Gee*, 612 P.2d at 1079 ("[T]he disparagement in the trade libel goes to the quality of property, rather than title.").

Statements that products were "structurally unsound" or had poor workmanship speak to the quality of property. *Atlatl Group LLC v. Unknown Parties*, 2023 WL 2596100, *3 (D. Ariz. 2023). *See also ZombieBox*, 721 F. Supp. 3d at 804–05 (statements that the plaintiff's product "void[ed] a generator's warranty;" was a "generator murder box;" and was "dangerous, damage[d] generators, and void[ed] warranties" supported a trade libel claim). Here, the only alleged falsehood is Defendant's statement that the Accused Products infringed the '531 Patent. (Doc. 1 at ¶ 115). This statement does not comment on, for example, the safety, soundness, or effectiveness of the Accused Products and instead raises questions about the product's title. Failing to make such allegations, Plaintiff does not adequately allege the disparagement of the *quality* of property. *See, e.g.*, *Morley v. Smith*, 2007 WL 1876382, *2 (D. Ariz. 2007) ("Plaintiffs' attempt to include in this claim other allegedly defamatory statements regarding the Mafia and 'running from the law' will be rejected. Neither comment disparages the quality of the plaintiff's property

---

[2] Plaintiff claims that when its listings were removed from Amazon they were "replaced by a derogatory 'dog' and with it the insinuation that the product was unreliable or poor quality[.]" (Doc. 46 at 13; *see also id.* at 12). Plaintiff includes a picture of the dog in its Response. (*See id.* at 11). But the Complaint itself has no allegations about a "derogatory" dog replacing the Accused Product's links. (*See generally* Doc. 1). Even assuming an error page with a picture of a dog could plausibly be construed as a derogatory statement about the Accused Products, Plaintiff's position in its Response must be disregarded because "a complaint cannot be amended by an opposition to a motion to dismiss." *Nationstar Mortgage LLC v. Presley*, 2021 WL 3164974, *4 (E.D. Cal. 2021).

and therefore cannot form the basis for a trade libel claim."). Accordingly, Plaintiff's trade libel claim is dismissed without prejudice.

### 3. False or Misleading Representation under the Lanham Act

Plaintiff maintains that it has sufficiently alleged a false advertising claim under 15 U.S.C. § 1125(a).[3] To state a Lanham Act false-advertising claim, a plaintiff must show: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Plaintiff alleges that Defendant "knowingly made false, misleading, disparaging and defamatory statements in commerce through the Takedown Notices to Amazon relating to [Plaintiff's] Supplements." (Doc. 1 at ¶ 129). And it further asserts that "[t]hese statements actually deceived Amazon and are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that [Plaintiff's] products violate patent rights (or may violate patent rights when used by customers), thereby materially affecting their decision and ability to purchase [Plaintiff's] products." (*Id.*) The statements were made "in interstate commerce," and have caused Plaintiff injury in the form of lost sales and goodwill. (*Id.* at ¶¶ 135, 137).

Defendant argues that courts in the Ninth Circuit "routinely hold that private

---

[3] Count V of Plaintiff's Complaint is titled "False or Misleading Representation under the Lanham Act." (Doc. 1 at 22). In their Motion, Defendant correctly notes that there is no claim for "false or misleading representation" or "product disparagement" under 15 U.S.C. § 1125(a). (*See* Doc. 24 at 14). Section 1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). However, Plaintiff's Response indicates that it intends to bring a false advertising claim. (Doc. 46 at 14). And, upon review of the claim, it is clear that Plaintiff brought a mislabeled false advertising claim. (*See* Doc. 1 at ¶¶ 125–42).

communications such as the Amazon Takedowns do not satisfy the 'commercial advertising or promotion' element of the Lanham Act." (Doc. 24 at 20). To constitute a commercial advertising or promotion, a statement must be

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (citation omitted).

In *BLM Products, Ltd. v. Covves, LLC*, the defendant "made representations to Amazon by filling out an infringement form on Amazon.com." 2017 WL 8811269, *5 (C.D. Cal. 2017). The court noted that, despite being commercial speech, "the representation was made only to Amazon, out of view of the general public." *Id.* As a result, the court concluded that the representations did not fall within the meaning of "commercial advertising or promotion" because they were not disseminated to the relevant purchasing public. *Id.* A similar Lanham Act claim was brought in *Sky Billiards, Inc. v. WolVol, Inc.*, 2016 WL 7479426, *2 (C.D. Cal. 2016), where the plaintiff's products were removed from Amazon following the defendant's complaints to Amazon. The plaintiff "only allege[d] Defendant contacted Amazon and alleged thirty-two of Plaintiff's products violated Defendant's intellectual property rights." The court found that "[a] reasonable inference cannot be made that by contacting Amazon, Defendant has made a commercial speech for the purpose of influencing consumers." *Id.*; *Thimes Solutions Inc. v. TP Link USA Corp.*, 2020 WL 6154192, *2 (C.D. Cal. 2020) ("Defendants' complaints were made directly to Amazon—who is not a consumer—and the complaints were not disseminated to the relevant purchasing public (i.e., Amazon users who might purchase Plaintiff's products)."); *Studio 010 Inc. v. Digital Cashflow LLC*, 2022 WL 1215529, *5 (W.D. Wash. 2022) ("[The defendant's] false complaints to Amazon do not constitute commercial

speech because the complaints were made directly to Amazon and not to consumers.").

Plaintiff alleges that Defendant's "false and misleading representations were sufficiently disseminated to actual and prospective customers by way of the Takedown Notices so as to constitute advertising." (*Id.* at ¶ 132). But Plaintiff's allegation that Defendant's false representations were "sufficiently disseminated" to customers is conclusory and is not supported by any other alleged facts. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Like in each of the above cases, Plaintiff alleges that the Takedown Notices were only made to Amazon. (*See, e.g., id.* at ¶¶ 4, 29, 106, 113, 129). "[Plaintiff] never explains how these notices were disseminated to customers," and the Complaint is otherwise devoid of any allegation that allows one to infer that the Takedown Notices were disseminated to customers. *ZAGG Inc. v. Ichilevici*, 2024 WL 3874584, *9 (S.D. Fla. 2024).

In short, the Complaint fails to establish that Defendant's Takedown Notices are "commercial advertising or promotion," and Plaintiff's false advertising claim is dismissed. This dismissal is without prejudice, but Plaintiff should consider whether the complaints to Amazon were actually disseminated to the purchasing public before opting to amend.

### 4. Tortious Interference and APTA Claims

Lastly, Defendant argues that Plaintiff's tortious interference and APTA claims fail to plead either "improper" or "bad faith" interference. (Doc. 24 at 21–22).

Regarding Plaintiff's tortious interference claim, Defendant argues that interference must be "improper" before liability attaches. (*Id.* at 21 (citing *B. J B. Cattle Co., Inc. v. Pace*, 763 P.2d 545 (Ariz. Ct. App. 1988)). "Wrongful interference rests on improper conduct by the defendant[.]" *Pace*, 763 P.2d at 547. Similarly, Defendant argues that to be liable under the APTA, there must be an assertion of bad faith patent infringement. (*Id.* (citing A.R.S. § 44-21 *et seq.*)). The Court has already found that, based on the totality of the Complaint, Plaintiff has alleged that Defendant submitted its Takedown Notices

knowing that the Accused Products did not infringe the '531 Patent. (*See* Doc. 1 at ¶¶ 73–74). These allegations sufficiently allege that Defendant's interference was improper and infringement claim was in bad faith. Further probing into the validity of Plaintiff's allegations is inappropriate at this stage.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 24) is **GRANTED IN PART** and **DENIED IN PART**. Count III is **DISMISSED WITH PREJUDICE**. Counts IV and V are **DISMISSED WITHOUT PREJUDICE**. Defendant's Motion as to Plaintiff's Counts VI and VII for tortious interference and violations of the APTA is **DENIED** and these claims may proceed.

Dated this 13th day of February, 2026.

_____
Honorable Diane J. Humetewa
United States District Judge