Clinton E. Duke (*Admitted Pro Hac Vice*)
  *clinton.duke@dentons.com*
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone:  (801) 415-3000

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Evolution Nutraceuticals Incorporated**, <br><br> Plaintiff, <br><br> v. <br><br> **ThermoLife International LLC**, <br><br> Defendant. | Civil No. 2:25-cv-00461-PHX-DJH <br><br> **PLAINTIFF'S MOTION TO DISMISS THERMOLIFE'S ABUSE OF PROCESS COUNTERCLAIM PURSUANT TO RULE 12(b)(6)** <br><br> JURY TRIAL DEMANDED <br><br> Honorable Diane J. Humetewa |

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.      Motion to Dismiss Standard................................................................... 2

II.     Elements Required to Plead Abuse of Process ....................................... 3

III.    ThermoLife's Abuse of Process Counterclaim Does Not Plead the
        Required Elements ................................................................................. 5

        A.    Cardio Miracle's Litigation Filings Are Not Cognizable "Process"
              Under Arizona's Abuse of Process Tort......................................... 5

        B.    ThermoLife Fails to Allege a Willful Act Beyond Regular
              Litigation Conduct ...................................................................... 6

        C.    ThermoLife Fails to Allege Facts Supporting an Ulterior Motive or
              Improper Purpose......................................................................... 9

        D.    ThermoLife Fails to Allege Cognizable Damages Caused by the
              Alleged Misuse of Process..........................................................11

        E.    Arizona's Litigation Privilege Bars the Claim........................................ 12

IV.     Sanctions ............................................................................................. 13

V.      Conclusion .......................................................................................... 13

**i**

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 3, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 2, 3

*Bird v. Rothman*, 128 Ariz. 599 (Ct. App. 1981) ......................................................................... 8

*Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695 (9th Cir. 1981) ........................ 4, 5

*Bollfrass*, 2020 WL 3440289 ....................................................................................................... 8

*BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19-60505-CIV-SMITH, 2021 WL
    2946170 (S.D. Fla. July 14, 2021) ........................................................................................ 1

*Crackel v. Allstate Ins. Co.*, 208 Ariz. 252 (Ct. App. 2004) ................................................ 3, 5, 8

*Donahoe v. Arpaio*, 869 F. Supp. 2d 1020 (D. Ariz. 2012), aff'd sub nom., 733 F.3d 804
    (9th Cir. 2013) .................................................................................................................... 6

*Fappani v. Bratton*, 243 Ariz. 306 (Ct. App. 2017) ................................................................. 3, 4

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 845 F. Supp. 1377 (D. Ariz.
    1993). ................................................................................................................................. 5

*Joseph v. Markovitz*, 27 Ariz. App. 122, 551 P.2d 571 (1976) ............................................ 4, 6, 8

*Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876 (1982) ................................................... 3, 6, 8

*Parker v. United States*, 2011 WL 13189942 (D. Ariz. May 6, 2011), aff'd, 500 F. App'x
    630 (9th Cir. 2012) ............................................................................................................. 4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .............................................................................. 3

*ThermoLife Int'l, LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019) ........................................ 1

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................................................... 10

ii

**Statutes**

28 U.S.C. § 1927 ........................................................................................................... 14

35 USC § 285 ................................................................................................................ 14

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................... 1

iii

**INTRODUCTION**

Plaintiff/Counterclaim Defendant Evolution Nutraceuticals, Inc. d/b/a Cardio Miracle ("Cardio Miracle") respectfully moves the Court to dismiss Count II (Abuse of Process) of Defendant/Counterclaim Plaintiff ThermoLife International, LLC's ("ThermoLife") Amended Answer and Counterclaims (Dkt. 87) for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).ThermoLife's abuse of process counterclaim is premised on normal filings in this case. ThermoLife identifies four specific filings as the alleged "processes" that were purportedly misused: (1) the Motion for Preliminary Injunction filed April 26, 2025; (2) the Emergency Motion for Protective Order filed June 6, 2025; (3) the Reply in Support of the Motion for Preliminary Injunction filed September 5, 2025; and (4) the Renewed Motion for Preliminary Injunction filed November 21, 2025. (Dkt. 87, Counterclaim ¶ 83.)

This counterclaim is particularly hypocritical given that ThermoLife has a documented history of bad faith litigation and a reputation as a patent bully. It seems that ThermoLife is desperately trying to paint itself as a victim even though it has brought frivolous claims and has been sanctioned for fabricating evidence.[1]  Of course, it is

---

[1] *ThermoLife Int'l, LLC v. GNC Corp.*, 922 F.3d 1347, 1355 (Fed. Cir. 2019) (ThermoLife and counsel brought "frivolous claims," and their "motivation was seemingly to extract nuisance-value settlements"); *BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19-60505-CIV-SMITH, 2021 WL 2946170, at *2 (S.D. Fla. July 14, 2021) (adopting magistrate judge's report and recommendation and sanctioning Thermolife where its owner, Ron Kramer, "committed a fraud

Cardio Miracle that is another victim of Thermolife's baseless Amazon takedowns, infringement allegations, and frivolous litigation.  Cardio Miracle had to bring this lawsuit to defend its business on Amazon. Thermolife's abuse of process claim is simply unsupportable and appears to have been brought in bad faith.

## ARGUMENT

ThermoLife's counterclaim fails as a matter of law for multiple independent reasons. First, the litigation filings ThermoLife identifies are not the type of "process" cognizable under Arizona's abuse of process tort. Second, the conduct ThermoLife alleges constitutes ordinary litigation conduct, not a willful misuse of a process. Third, ThermoLife's allegations of ulterior motive are conclusory and, in substance, amount to a complaint that Cardio Miracle has continued this litigation rather than close its doors. Fourth, ThermoLife's claimed damages are nothing more than the ordinary costs of litigation. Finally, Arizona's litigation privilege bars the counterclaim.

## I.    Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted. To survive dismissal, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

upon the Court when [he] knowingly fabricated evidence to advance his case and repeatedly attempted to obstruct discovery of that fraud").

2

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept well-pleaded factual allegations as true, it "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (*quoting Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The same pleading standards apply to counterclaims. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## II.      Elements Required to Plead Abuse of Process

Under Arizona law, a plaintiff asserting an abuse of process claim must establish: "(1) a willful act or use of process not proper in the regular conduct of the proceeding; (2) an ulterior motive or purpose in the exercise of such use; and (3) damage as a result of the irregular act." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (1982); *see also Fappani v. Bratton*, 243 Ariz. 306, 309 (Ct. App. 2017); *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257 (Ct. App. 2004). Abuse of process is directed to the misuse or misapplication of process that was "justified in itself for an end other than that which it was designed to accomplish." *Joseph v. Markovitz*, 27 Ariz. App. 122, 125, 551 P.2d 571, 574 (1976). "One who uses a legal process … against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Fappani*, 243 Ariz. at 309. It concerns "an act done under the authority of the court for the purpose of perpetrating an injustice." *Parker v. United*

SL_8860285.2

*States*, 2011 WL 13189942, at *7 (D. Ariz. May 6, 2011), aff'd, 500 F. App'x 630 (9th Cir. 2012).

The mere filing of a complaint or the regular litigation of a claim cannot constitute abuse of process. As the Ninth Circuit observed, "[t]he essence of the tort of abuse of process is the perversion of legal proceedings properly set in motion to a purpose for which it was not intended." *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 696 (9th Cir. 1981) (applying Arizona law). "The usual form of the tort is coercion to obtain a collateral advantage not the proper object of the proceeding, as in forms of extortion." *Id*. Importantly, "[a]buse of process ... is not commencing an action or causing process to issue without justification." *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 845 F. Supp. 1377, 1385 (D. Ariz. 1993). Rather, the tort requires "an overt act other than the initiation of a lawsuit to effect the illegitimate end," as "[i]t is the subsequent misuse which constitutes the misconduct for which liability is imposed." *Id*. To sustain a claim for abuse of process, a plaintiff "must present evidence that the defendant committed a specific '[willful] act ... not proper in the regular conduct of the proceedings.'" *Crackel*, 208 Ariz. at 258. Thermolife has not and cannot identify anything that meets these requirements.

Even if ThermoLife's allegations of delay are taken at face value, they are nowhere near what is required to assert abuse of process. It is clear that "a generalized allegation that a defendant has misused the litigation process as a whole cannot support a

**4**

claim of abuse of process." *Crackel*, 208 Ariz. at 258. Moreover, "evidence of the defendant's mere persistence in litigation, even if based on an improper motive, does not sustain the tort." *Id*. As the Ninth Circuit concluded in *Blue Goose*, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." 641 F.2d at 696. Even where litigation is motivated by "pure spite," such motivation is insufficient to state an abuse of process claim "where process is used only to accomplish the result for which it was created." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1060 (D. Ariz. 2012), aff'd sub nom., 733 F.3d 804 (9th Cir. 2013).

### III.   ThermoLife's Abuse of Process Counterclaim Does Not Plead the Required Elements

#### A.   Cardio Miracle's Litigation Filings Are Not Cognizable "Process" Under Arizona's Abuse of Process Tort

The tort of abuse of process historically applies to the misuse of court-issued compulsory mechanisms such as subpoenas, writs of attachment, garnishment orders, writs of execution, and similar instruments that compel a party or third party to act. *See Nienstedt*, 133 Ariz. at 353. ThermoLife's abuse of process counterclaim rests on allegations that Cardio Miracle made routine litigation filings including a motion for preliminary injunction, a motion for protective order, a reply brief, and a renewed motion for preliminary injunction. Such motions are part of the ordinary course of litigation, not a "process" in the sense of this tort. ThermoLife cites no Arizona authority holding that a party's own motion papers, briefs, or declarations constitute this type of "process."

5

ThermoLife's attempt to recharacterize ordinary litigation filings as "process" would effectively transform every contested motion into a potential abuse of process claim. Arizona courts have consistently held that the mere filing and prosecution of legal proceedings, even with an improper motive, does not give rise to an abuse of process claim. *See Joseph v. Markovitz*, 27 Ariz. App. 122, 126 (1976).

### B. ThermoLife Fails to Allege a Willful Act Beyond Regular Litigation Conduct

Even if the Court were to conclude that Cardio Miracle's litigation filings constitute cognizable "process," ThermoLife's counterclaim still fails because it does not allege a willful act or use of process not proper in the regular conduct of the proceeding. Every act that ThermoLife identifies as constituting "abuse" is ordinary and proper litigation conduct. Cardio Miracle used the preliminary injunction process for the purpose which it is designed—to enjoin ThermoLife from (i) "further acts of wrongful assertion of the U.S. Patent No. 8,455,531" and (ii) "filing any additional Amazon takedown requests under U.S. Patent No. 8,455,531," as well as (iii) compelling ThermoLife to affirmatively withdraw all Amazon [ ] takedown requests." (*See* Dkt. 20 at 1-20.) The relief sought by Cardio Miracle in its Motion for Preliminary Injunction is and entirely consistent with the claims and defenses in this litigation.

ThermoLife's claim is focused on Cardio Miracle's purported "purpose" "to delay the preliminary injunction proceedings, capitalize on ThermoLife's stipulation, shield its Amazon sales from enforcement, and obtain via federal injunction the same relief it was

**6**

contractually bound to arbitrate with Amazon." (Dkt. 87, Counterclaim ¶ 62.) ThermoLife's focus on the alleged "improper purpose[ ]" to "drag out and manipulate the proceedings for as long as commercially advantageous" is insufficient. (Dkt. 87, Counterclaim ¶ 84.) Of course, Cardio Miracle did not seek an injunction with bad intentions—it was forced do to so to protect itself from Thermolife's baseless and harmful patent assertion tactics.  Regardless, even if Thermolife's allegations were true, "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Joseph*, 27 Ariz. App. at 126 (emphasis added).

 "An ulterior purpose alone cannot constitute abuse of process." *Bird v. Rothman*, 128 Ariz. 599, 602 (Ct. App. 1981). Rather, ThermoLife must show that the defendant "took an action that could not logically be explained without reference to the defendant's improper motives." *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 259 (Ct. App. 2004) (emphasis added). Cardio Miracle's filings can, of course, be explained by the fact that Cardio Miracle needed a Court's ruling that it did not infringe any valid claims of the asserted patent in order to refute ThermoLife's unsupported take down requests.

An attempt to seek a preliminary injunction stands in stark contrast to examples of abuses that could sustain an abuse of process claim, such as repeatedly using subpoenas to exhaust an opponent's financial resources or assigning collection accounts to a remote

7

location, thereby exposing debtors to the inconvenience and expense of attending a distant court. *See Neinstedt v. Wetzel*, 133 Ariz. 348, 354 (App. 1982); *see also Bollfrass*, 2020 WL 3440289, at *15 ("[T]he mere initiation of the injunction against harassment proceedings is not sufficient to maintain an action for abuse of process").

Similarly, seeking a protective order, filing a reply brief, and renewing a motion that was allowed by the Court are contemplated by the federal and local rules and are routine parts of discovery and litigation. (Dkt. 87, Counterclaim ¶¶ 78-87.) While ThermoLife contested these filings and speculated on Cardio Miracle's motives, the Court found no abuse, frivolity, or vexatiousness in this litigation. (Dkt. 42; Dkt. 78 at 3-4.) A party is entitled to advance its claims as well as to reassess its strongest positions and arguments.

ThermoLife also alleges that portions of Cardio Miracle's briefing and declarations were "copied verbatim" from a filing by a different party in a separate case and that Cardio Miracle made a false statement to the Court. (Dkt. 87, Counterclaim ¶¶ 64-68.) Even taking these statements as true, they are not willful acts beyond the ordinary scope of litigation.

In sum, every act ThermoLife identifies falls squarely within the scope of ordinary litigation conduct. Under Arizona law, the mere filing of a complaint or the regular use of procedures after a complaint is filed cannot constitute abuse of process even if the claimant has an ulterior motive for filing the complaint. ThermoLife has not alleged any act beyond the regular litigation of this action.

**8**

## C.    ThermoLife Fails to Allege Facts Supporting an Ulterior Motive or Improper Purpose

ThermoLife's allegations of ulterior motive are conclusory and legally insufficient. ThermoLife alleges, "[u]pon information and belief," that Cardio Miracle's "primary purpose was not to obtain a ruling on its preliminary injunction motion" but rather "to obtain, and then maintain, the court-ordered standstill that would prevent ThermoLife from enforcing its patent rights on Amazon." (Dkt. 87, Counterclaim ¶ 88.) ThermoLife further alleges that Cardio Miracle filed its motion "for the improper purpose of restraining ThermoLife's First Amendment right to communicate and assert its patent rights" and "to expose ThermoLife to excessive attorney's fees and legal expenses." (Dkt. 87, Counterclaim ¶¶ 89-90.)

These allegations fail for several reasons. First, the purposes ThermoLife ascribes to Cardio Miracle are not "ulterior" at all — they are the very purposes for which preliminary injunctive relief exists. The entire point of a preliminary injunction is to preserve the status quo and restrain the opposing party's conduct pending a resolution on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Cardio Miracle sought to enjoin ThermoLife from filing Amazon takedown requests that Cardio Miracle contended (and still contends) were based on an objectively baseless assertion of patent infringement. That is a legitimate litigation objective, regardless of whether ThermoLife disagrees with the merits. A party's desire to obtain the very relief that a motion is designed to provide is not an "ulterior motive."

**9**

SL_8860285.2

Second, ThermoLife's allegation that Cardio Miracle sought to "restrain ThermoLife's First Amendment right to communicate and assert its patent rights" (Dkt. 87, Counterclaim ¶ 89) is simply a recharacterization of Cardio Miracle's merits position. Cardio Miracle contends that ThermoLife's Amazon takedowns were based on bad-faith assertions of a patent that cannot cover the Accused Products. Seeking to restrain wrongful patent enforcement is a legitimate litigation objective, not evidence of abuse. Indeed, this litigation was required to prevent Thermolife's abusive and unjustified practices.

Third, ThermoLife's allegation that Cardio Miracle sought to impose excessive litigation costs (Dkt. 87, Counterclaim ¶ 90) is both conclusory and inadequate.  It is worth noting that such an allegation *from Thermolife* should be viewed with skepticism given that Thermolife is a serial litigant that has been accused of vexatious litigation and has been found by other courts to have filed frivolous claims and has been sanctioned for manufacturing evidence. Regardless, ThermoLife does not allege any specific facts suggesting that Cardio Miracle's litigation conduct was designed to inflict costs untethered to any legitimate litigation objective. Every filing ThermoLife challenges served a discernible litigation purpose.

Finally, ThermoLife's allegations of motive are pleaded "[u]pon information and belief" without any factual support. Bare assertions of improper motive, even when

**10**

pleaded on information and belief, are "legal conclusions" that the Court is "not bound to accept as true." *Iqbal*, 556 U.S. at 678.

> **D.**     **ThermoLife Fails to Allege Cognizable Damages Caused by the Alleged Misuse of Process**

ThermoLife's damages allegations are generic and fail to identify any harm attributable to the alleged misuse of process as distinguished from the ordinary costs of litigation. ThermoLife alleges that it suffered "economic losses, reputational harm, emotional distress, consequential damages and attorney's fees and costs" as a result of Cardio Miracle's "abuse of process." (Dkt. 87, Counterclaim ¶ 91.) ThermoLife also seeks punitive damages. (Dkt. 87, Counterclaim ¶ 92.)

These allegations are insufficient because they describe nothing more than the inherent burdens of participating in litigation. Every defendant in every lawsuit incurs attorney's fees and costs. Every party to complex commercial litigation may experience some degree of economic disruption or reputational concern. ThermoLife does not identify a single specific injury that was caused by the alleged abuse of process rather than by the existence of this litigation itself.

Moreover, ThermoLife's theory of damages is internally contradictory. ThermoLife contends that Cardio Miracle's preliminary injunction filings caused harm by preventing ThermoLife from enforcing its patent on Amazon. But the stipulation that ThermoLife would not reassert the '531 patent on Amazon pending the preliminary injunction ruling was voluntary. ThermoLife itself "volunteered" that commitment. (Dkt.

11

87, Counterclaim ¶ 61.) Any harm ThermoLife suffered from the temporary standstill was thus the product of its own strategic decision, not Cardio Miracle's alleged abuse.

### E.    Arizona's Litigation Privilege Bars the Claim

ThermoLife's abuse of process counterclaim is also barred by Arizona's absolute litigation privilege. Arizona recognizes an absolute privilege that immunizes statements and conduct undertaken in the course of judicial proceedings. The privilege serves the vital purpose of ensuring that litigants can pursue their claims and defenses without fear of retaliatory tort suits.

The conduct ThermoLife challenges — filing motions, submitting declarations, advancing legal arguments, and seeking judicial relief — is precisely the type of litigation activity protected by the privilege. ThermoLife's counterclaim is, in substance, a tort claim based on Cardio Miracle's litigation filings and advocacy before this Court. Permitting such a claim to proceed would chill the vigorous advocacy that our legal system demands and would subject every litigant to the risk of a retaliatory abuse of process counterclaim whenever the opposing party disagrees with the merits or strategy of a filing.

The litigation privilege applies with particular force here because ThermoLife's counterclaim targets conduct that occurred entirely within the context of contested judicial proceedings. Every filing ThermoLife identifies was submitted to this Court and addressed through the Court's normal procedures. The proper remedy for any perceived

**12**

litigation misconduct is through the Court's existing procedural tools, not through a separate tort claim.

## IV.    Sanctions

ThermoLife seems to be asking the Court to sanctions based on its abuse of process claim. In its Prayer for Relief, it requests "damages adequate to compensate ThermoLife for the harm from Cardio Miracle's abuse of the Court's processes" and "punitive damages for its abuse of the Court's processes." (Dkt. 87 at 32.) As discussed above, ThermoLife cannot support an abuse of process claim and Cardio Miracle should not be sanctioned for ordinary litigation. Again, it is ThermoLife that has a history of frivolous litigation and fraud during litigation. On the whole, Cardio Miracle is confident that it will be clear that ThermoLife's litigation conduct, not Cardio Miracle's, will support a finding of vexatious litigation under 28 U.S.C. § 1927 or exceptional case under 35 USC § 285.

## V.    Conclusion

For the foregoing reasons, ThermoLife's abuse of process counterclaim (Count II) fails to state a claim upon which relief can be granted. Cardio Miracle respectfully requests that this counterclaim be dismissed.

Dated: March 20, 2026

Respectfully Submitted,

/s/ *Clinton E. Duke*

**13**

Clinton E. Duke
**DENTONS DURHAM JONES PINEGAR, P.C.**

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

**14**

SL_8860285.2

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that on or about **March 20, 2026**, I electronically transmitted

the attached document to the Clerk's Office using the U.S. District Court for the District

of Arizona's Electronic Document Filing System (ECF), by which it was then transmitted

to at least the counsel for Defendant listed as counsel of record on ECF.

/s/  Clinton E. Duke

Clinton E. Duke
**DENTONS DURHAM JONES PINEGAR, P.C.**

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

**CERTIFICATE OF COMPLIANCE**

I, the undersigned, certify I notified counsel for Defendant of the issues asserted in this

Motion to Dismiss and that counsel for the parties were unable to agree that Defendant's

second counterclaim for abuse of process was curable through amendment.

/s/  Clinton E. Duke

Clinton E. Duke
**DENTONS DURHAM JONES PINEGAR, P.C.**

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

15