**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evolution Nutraceuticals Incorporated, | No. CV-25-00461-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| ThermoLife International LLC, | |
| Defendant. | |

On November 21, 2025, Plaintiff Evolution Nutraceuticals Inc. d/b/a Cardio Miracle ("Plaintiff" or "Cardio Miracle") filed a Motion and Memorandum in Support of Motion for Preliminary Injunction (Doc. 83).    Defendant ThermoLife International LLC ("Defendant" or "ThermoLife") then filed a Response in Opposition (Doc. 84), and Plaintiff filed a Reply (Doc. 85).  For the following reasons, the Court denies Plaintiff's Motion.

**I.    Background**

Plaintiff produces dietary supplement products to stimulate safe, sustained nitric oxide in the body's vasculature.  (Doc. 1 at ¶ 21).  Defendant is a raw material supplier for dietary supplements and holds multiple patents, including the one at issue here—U.S. Patent No. 8,455,531 ('531 Patent).  (*Id.* at ¶¶ 25–26). The '531 Patent is directed to nitrate-containing amino acid compositions and their use in a human or animal for increasing bioabsorption of amino acids or vasodilative characteristics.  (Doc. 1-1 at 1).  The parties primarily dispute whether Plaintiff infringed upon Defendant's '531 Patent and whether

the '531 Patent is valid.  At particular issue here is claim 62, which states:

> A solid supplement formulation comprising: at least one non-ester nitrate compound; and at least one isolated amino acid compound selected from the group consisting of Agmatine, Beta Alanine, Citrulline, L-Histidine, Norvaline, Ornithine, Aspartic Acid, Cysteine, Glycine, Lysine, Methionine, Praline, Tyrosine, and Phenylalanine, wherein the at least one isolated amino acid compound is a separate compound than the at least one non-ester nitrate compound.

(*Id.* at 6).

Since 2013, Plaintiff has produced its dietary supplements and sold its products on a "variety of online platforms," including Amazon.com.  (Doc. 1 at ¶ 21, 23).  On Amazon.com, the at-issue products were sold under the Amazon Standard Identification Numbers ("ASINs"): B071T51TWY, B0CWW3GD39, and B01H6BTRFO (the "Accused Products"), and the sales generated from these listings accounted for approximately 20% of the Accused Products' total sales.  (*Id.* at ¶ 23).  In October of 2024, Defendant filed one or more complaints (the "Takedown Notices") with Amazon claiming that the Accused Products infringed upon its patented nitrate and requesting that Amazon remove the Accused Products' listings.  (*Id.* at ¶¶ 4–5).  Upon receipt of the Takedown Notices, Amazon sent Policy Violation Notices to Plaintiff and deactivated Accused Products' listings.  (*Id.* at ¶¶ 4, 81).  Plaintiff, in response to his removal, sent two non-infringement letters to Amazon and asked for the listings to be restored.  (*Id.* at ¶¶ 31–32).  When the attempts were unsuccessful, Plaintiff brought this action against Defendant on February 12, 2025, alleging that the removal of its products from Amazon has caused lost sales, loss of customer goodwill, and damage to its rankings.  (*See id.* at ¶¶ 78–84).

Plaintiff seeks declaratory judgment of non-infringement of the '531 Patent and declaratory judgment of invalidity of the '531 Patent.  (*Id.* at ¶¶ 88–155).  Plaintiff asserts that Accused Products held no more than a de minimis amount of nitrate and, therefore, did not infringe on Defendant's '531 Patent.  (*Id.* at ¶¶ 31–56).  Further, Plaintiff claims that, if the de minimis amount of nitrate in its Accused Products infringed the '531 Patent, then the Patent is invalid as obvious or anticipated by prior art supplements.  (*Id.* at ¶¶ 57–

73).

On April 26, 2025, Plaintiff filed a Motion for Preliminary Injunction to enjoin Defendant's allegedly wrongful assertion of the '531 Patent and compel Defendant to withdraw Amazon takedown requests concerning the Accused Products.  (*See* Doc. 20). The parties then stipulated to a partial injunction and agreed to conduct expedited discovery. (Doc. 23).  The Court granted this stipulation, and the timeline for briefing the original Preliminary Injunction Motion was extended, ultimately becoming ripe for ruling on September 5, 2025.  (*See* Docs. 23, 57).  However, Defendant filed a Motion to Strike Plaintiff's Reply in support of its Motion, arguing that Plaintiff's Reply raised new factual arguments that were not presented in its Motion and were not responsive to arguments in Defendant's Response.  (Doc. 61).  After the Motion to Strike was fully briefed, the Court found that the Reply contained newly raised arguments but, in light of the discovery efforts that had occurred, determined that the best course forward was to deny Plaintiff's Motion for Preliminary Injunction without prejudice and with leave to re-file.  (*See* Doc. 78). Plaintiff's renewed and fully briefed Motion for Preliminary Injunction is now before the Court.

## II.    Legal Standard

Injunctive relief is an "extraordinary remedy only granted upon a clear showing that a [petitioner] is entitled to such relief." *Nat'l Ass'n for Gun Rts., Inc. v. Motl*, 188 F. Supp. 3d 1020, 1028 (D. Mont. 2016) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).   The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted).  On an application for a temporary restraining order or preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious

questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." *Global Horizons, Inc. v. U.S. Dep't of Lab.*, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987)).

The movant carries the burden of proof on each element of the test. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980); *see also BlephEx, LLC v. Myco Industries, Inc.*, 24 F.4th 1391, 1398 (Fed. Cir. 2022) ("The burden is always on the movant to show that it is likely to succeed on the merits."). The plaintiff may meet this burden if it "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Johnson v. Cal. St. Bd. of Acct.*, 72 F.3d 1427, 1429 (9th Cir. 1995) (internal quotation marks and citation omitted); *see also BelphEx*, 24 F.4th at 1399 ("If an alleged infringer attacks the validity of a patent at the preliminary injunction stage…it bears the initial burden 'to come forward with evidence of invalidity,' just as it would at trial.").

### III.   Discussion

After reviewing the briefing on Plaintiff's Motion, the Court is most concerned with Plaintiff's claim that it has and will continue to suffer irreparable damage if a preliminary injunction is not issued. The Court accordingly starts the discussion there because even under a sliding scale approach to preliminary injunctions, "plaintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction." *Cottrell*, 632 F.3d at 1135.

In its Motion, Plaintiff argues that removal of the Accused Products has caused lost sales as well as damage to its "standing, status, and goodwill which is irreparable with

money damages." (Doc. 83 at 16). Plaintiff says its "inability to supply customers threatens 'reputation' as a 'dependable distributor' " and that its nonquantifiable damages include losing its "previously held first-page status" on Amazon. (*Id*. at 16–17). Defendant contends that Plaintiff has not shown that irreparable harm is likely to result in the absence of an injunction because it has only supported its claim of irreparable harm with conclusory, uncorroborated statements. (*See* Doc. 84 at 19–21). Upon review of the record, the Court finds that Plaintiff has failed to produce sufficient evidence of irreparable harm.

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." Arizona Dream Act Coalition v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014). An injunction ordered on any lesser showing is "inconsistent" with the "characterization of injunctive relief as an extraordinary remedy[.]" *Winter*, 555 U.S. at 22. Importantly, a plaintiff moving for a preliminary injunction "must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enterprises, LLC v. Fla. Ent. Mgt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013); *Boring v. Murillo*, 2024 WL 3608331, *2 (C.D. Cal. 2024) ("Generally the showing of irreparable harm to the Plaintiff must be supported with concrete evidence.").

Here, Plaintiff's discussion of irreparable harm is cursory, including little to no analysis on this crucial *Winter* factor. Although it provides two cases supporting its claim of irreparable harm, Plaintiff offers almost no evidence to buttress its irreparable harm argument. Plaintiff's "evidence" amounts to allegations in its Complaint and to averments made by Plaintiff's Vice President of Finance in support of its original motion for preliminary injunction. (*See* Doc. 83 at 16–17).

These allegations fail to establish a likelihood that Plaintiff will suffer irreparable harm without an order directing Defendant to stop seeking takedown requests for its dietary supplements. Initially, Plaintiff's Complaint is not verified, and allegations in a complaint are not evidence. *See*, *e.g.*, *In re Nassbridges*, 464 B.R. 494, *12 (Bankr. App. 9th Cir. 2011) ("[A]llegations in a complaint do not constitute evidence."). Further, meeting the

high bar to obtain preliminary injunctive relief "requires factual support beyond the allegations of the complaint[.]" *CI Games S.A. v. Destination Films*, 2016 WL 9185391, *11 (C.D. Cal. 2016).

The general averments provided by Bruce Haglund, an outside consultant functioning as Plaintiff's VP of Finance, also fail to provide the Court with concrete evidence of irreparable harm. Mr. Haglund avers that:

> Online market share and rankings on Amazon.com can take months to gain and are based upon algorithms that take into account consecutive sales and sales velocity. Products are thus ranked higher, or near the top of the search, for products with ongoing and positive sales. Cardio Miracle has invested significant resources, time, and money into improving and maintaining its Amazon ranking in order to be highly placed in Amazon's ranking system for the Accused Products.

> As a result of the Takedown Notices and the deactivated listings for the Accused Products, there was a significant time period of no sales for the Accused Products on Amazon. This has a negative effect on the rankings of the Accused Products.

> It will take significant amount of time and money to recapture Cardio Miracle's high ranking prior to the October 21, 2024 Takedown Notice in order to once again be competitive in the supplement market. However Cardio Miracle may never be able to fully restore its ranking and goodwill.

(Doc. 20-4 at ¶¶ 14–16). These statements do not provide any concrete evidence of irreparable harm. They are both speculative and vague, lacking any specificity from which the Court could conclude that irreparable harm is likely imminent. *VMR Products, LLC v. V2H ApS*, 2016 WL 7669497, *14 (C.D. Cal. 2016) ("Cursory, speculative, and conclusory allegations of irreparable harm are insufficient.") (citing *Herb Reed*, 736 F.3d at 1250).

Notably, this is Plaintiff's renewed Preliminary Injunction Motion; since the inception of this case, the removed Accused Products' ASINs have been restored. In consequence, Plaintiff should have been able to provide specific information about the effect of the removal and substantiate the harm that would likely befall Plaintiff if the Takedown Notices were reasserted. Instead, Plaintiff relied on statements made in a declaration attached to its original motion that, at most, assert Plaintiff "may never be able

to fully restore its ranking and goodwill." (Doc. 20-4 at ¶ 16).

Plaintiff cites the out-of-circuit case, *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24 (2d Cir. 1978) for the premise that the "inability to supply customers threatens 'reputation' as a 'dependable distributor.'" (Doc. 83 at 16 (citing *John B. Hull*, 588 F.2d at 29)). In *John B. Hull*, the court considered whether irreparable harm to the plaintiff's goodwill could be found in a price discrimination case. *John B. Hull*, 588 F.2d at 29. The court noted that the "cases in which loss of goodwill previously has been held to constitute irreparable injury have involved the termination of franchise or distributorship relationships." *Id.* And it further observed that "[i]n that situation, the plaintiff is deprived totally of the opportunity to sell an entire line of merchandise and may incur injury to its goodwill and reputation 'as a dependable distributor which offers a full line' of goods." *Id.* (quoting *Supermarket Services, Inc. v. Hartz Mt. Corp.*, 382 F. Supp. 1248, 1256 (S.D.N.Y. 1974)). Initially, *John B. Hull* concerned a claim of unlawful price discrimination in violation of the Clayton Act between two companies selling heating oil, so its factual circumstances are not comparable to Plaintiff's. *Id.* at 26. Even still, notwithstanding factual differences, no holding in *John B. Hull* supports Plaintiff's claim of irreparable harm because the court determined that the defendant waived its argument about loss of goodwill and consequently did not reach a decision about whether the plaintiff's claimed loss of goodwill constituted an irreparable injury. *See id.* at 29.

The text from *John B. Hull* that Plaintiff cites appears in the court's discussion of other cases in which the plaintiff's loss of goodwill established irreparable harm. *See id.* The *John B. Hull* court was specifically quoting *Supermarket Services*. *Supermarket Services* involved alleged violations of the Sherman Act "through territorial and customer limitations allegedly imposed by [the defendant] on [the plaintiff], and by [the defendant's] alleged monopolization or attempting to monopolize the sale and distribution of pet accessories and bird food, particularly to mass merchandising outlets." 382 F. Supp. at 1248–49. Examining irreparable harm, the court found a "distinct possibility that [the plaintiff's] business reputation and good will may be irreparably harmed." *Id.* at 1256. In

finding so, the court noted that "[s]ome customers [had] already been informed by [the defendant] of [the plaintiff's] termination," and that the defendant would not be able to "fill the orders of other customers because its inventories of [the defendant's] products have been drastically reduced by [the defendant's] refusal to fill [the plaintiff's] orders. *Id.* Therefore, "[the plaintiff's] reputation in the industry as a dependable distributor which offers a full line of non-food items is in jeopardy." *Id.* Here, dissimilar to the *Supermarket Services* plaintiff, Cardio Mircale does not identify how its reputation could be damaged, nor does it offer any evidence to corroborate a claim of reputational harm.

Plaintiff also relies on *Medcursor Inc. v. Shenzen KLM Internet Trading Co., Ltd.*, 543 F. Supp. 3d 866 (C.D. Cal. 2021). (*See* Doc. 83 at 17). The district court in *Medcursor* found "that Plaintiff's product delisting, if left unchecked, will likely result in nonquantifiable damages relating to lost business opportunities on Amazon, including product placement disadvantages such as losing Plaintiff's previously held first-page status." *Id.* at 879. The Court agrees that placement disadvantages *can* amount to nonquantifiable damages supporting a finding of irreparable harm. But unlike the plaintiff in *Medcursor*, Plaintiff has failed to substantiate its claims of irreparable harm in any manner.

The plaintiff in *Medcursor* provided specifics to the court about its likely irreparable harm by attesting to facts such as "Amazon notified Plaintiff that its [12,00 pieces of] inventory will be subject to mandatory return;" "[b]ased on Plaintiff's prior experience, a prolonged delisting of multiple [items] will result in deactivation of its selling account at any time;" and "Plaintiff has already lost its first page spot on Amazon, which it achieved through years of diligent sales and active marketing." *See id.* at 877–78 (internal quotation marks omitted). Significantly, the plaintiff also offered testimony showing that it sold "its products almost exclusively on Amazon and, as happened to Plaintiff in 2019 when Defendants filed their first infringement notice [], if left in place, the infringement notice will likely again result in deactivation of Plaintiff's seller's account," which would have effectively put the plaintiff out of business. *Id.* at 878. By contrast, Plaintiff has provided

no evidence that it lost or will lose its first-page status and certainly has not shown that the viability of its business is threatened by the Takedown Notices. Plaintiff only states that deactivated listings have a "negative effect" on the Accused Products. (Doc. 20-4 at ¶ 15). Finding irreparable harm on the basis of a singular, vague assertion would be inconsistent with the extraordinary relief requested by Plaintiff.

Undoubtedly, courts have concluded that damage to reputation, loss of goodwill, and lost business opportunities constitute irreparable harm. But no amount of supporting caselaw negates the requirement that a party moving for a preliminary injunction furnish sufficient evidence of its own likelihood of imminent, irreparable harm. *Herb Reed*, 736 F.3d at 1250 ("As with its speculation on future harm, citation to a different case with a different record does not meet the standard of showing 'likely' irreparable harm."); *see also California Power Athletes, Inc. v. Cali Power Inc.*, 2025 WL 3691843, *4 (C.D. Cal. 2025). In its Response, Defendant highlights the dearth of evidence establishing irreparable harm. (*See* Doc. 84 at 20 ("Cardio Miracle offers no concrete evidence. It identifies no customer who is even aware of ThermoLife's infringement assertions, much less reluctant to do business as a result. It submits no customer affidavits, no data showing lasting loss of market share, and no proof of reputational injury.")). Yet, in its Reply, Plaintiff only addressed irreparable harm by asserting, "[f]or the reasons stated in Cardio Miracles [sic] opening brief, the remaining three factors of irreparable harm, balance of equities, and public interest are clearly met and not reasonably disputed by ThermoLife." (Doc. 85 at 14).

Simply put, the Court finds that Plaintiff has not met its burden to substantiate a likelihood of irreparable harm. And "[w]ithout showing irreparable harm, the Plaintiff[] [has] failed to meet [its] burden for issuing a preliminary injunction." *Defs. of Wildlife v. Salazar*, 812 F. Supp. 2d 1205, 1210 (D. Mont. 2009); *Dunn v. Cate*, 2010 WL 1558562, *2 (E.D. Cal. 2010) ("An essential prerequisite to the granting of a preliminary injunction is a showing of irreparable injury in its absence.") (citation omitted).

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion and Memorandum in Support of Motion for Preliminary Injunction (Doc. 83) is **DENIED**.

Dated this 13th day of April, 2026.

Honorable Diane J. Humetewa
United States District Judge