Clinton E. Duke (*Admitted Pro Hac Vice*)
  *clinton.duke@dentons.com*
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone:  (801) 415-3000

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Evolution Nutraceuticals Incorporated**,<br><br>Plaintiff,<br><br>v.<br><br>**ThermoLife International LLC**,<br><br>Defendant. | Civil No. 2:25-cv-00461-PHX-DJH<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS THERMOLIFE'S ABUSE OF PROCESS COUNTERCLAIM**<br><br>JURY TRIAL DEMANDED<br><br>Honorable Diane J. Humetewa |

SL_8953675.1

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ......................................................................................................... 1

ARGUMENT................................................................................................................. 1

    I.      Preliminary Injunction Proceedings Are Normal Litigation — Not a Basis for Abuse of Process ...................................................................................... 2

    II.    Abuse of Process Claims Are Reserved for Extreme Misconduct — Not Routine Litigation Disputes ...................................................................... 3

    III.   ThermoLife's Cases Are Mischaracterized and Actually Demonstrate What Is Lacking Here.............................................................................................. 4

    IV.   Conclusion .......................................................................................... 9

SL_8953675.1

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*BKN Mgmt. LLC v. Caniglia*, No. CV-14-01465-PHX-GMS, 2014 WL 12672632 (D. Ariz. Nov. 25, 2014) ................................................................................................ 6

*Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 696 (9th Cir. 1981) ............ 4, 6, 8

*Bollfrass v. Meinhold*, No. CV-19-04014-PHX-MTL, 2020 WL 3440289 (D. Ariz. June 23, 2020) .................................................................................................. 6, 8

*Cota v. Arizona*, No. CV-10-1024-PHX-GMS, 2010 WL 4682488 (D. Ariz. Nov. 10, 2010) ......................................................................................................... 5, 8

*Donahoe v. Arpaio*, 869 F. Supp. 2d 1020 (D. Ariz. 2012) .......................................... 7, 8

*Flores v. Rafi Law Group PLLC*, No. CV-24-00256, 2024 WL 4988390 (D. Ariz. Dec. 5, 2024) ........................................................................................................ 7, 8

*GRK Holdings, LLC v. First American Title Ins. Co.*, 2011 WL 42620 (D. Ariz. Jan. 6, 2011) ......................................................................................................... 5, 8

*Joseph v. Markovitz*, 27 Ariz. App. 122, 551 P.2d 571 (1976) .................................... 7, 8

*Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876 (Ct. App. 1982) .......................... 4, 8

*Norton v. Arpaio*, No. CV-15-00087-PHX-SPL, 2015 WL 13759956 (D. Ariz. Nov. 20, 2015) ......................................................................................................... 5, 8

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................. 2

SL_8953675.1

## INTRODUCTION

Plaintiff/Counterclaim Defendant Evolution Nutraceuticals, Inc. d/b/a Cardio Miracle ("Cardio Miracle") respectfully submits this Reply in Support of its Motion to Dismiss Count II (Abuse of Process) of Defendant/Counterclaim Plaintiff ThermoLife International, LLC's ("ThermoLife") Amended Answer and Counterclaims (Dkt. 87). ThermoLife's Opposition (Dkt. 96) attempts to normalize the use of an abuse of process claim in the context of ordinary preliminary injunction proceedings — a drastic expansion of the tort that is not supported by the cases ThermoLife cites.

The "processes" ThermoLife complains of — a motion for preliminary injunction, a motion for protective order, a reply brief, and a renewed motion for preliminary injunction — are the routine procedural incidents of any contested preliminary injunction proceeding. (Dkt. 87, Counterclaim ¶ 83.) ThermoLife's cases, when examined on their actual facts, involve extreme misconduct — fabricated evidence before grand juries, knowing violations of Rule 11, fraudulent filings designed for extortion — that bear no resemblance to the ordinary litigation conduct at issue here. Far from supporting ThermoLife's position, its own authorities demonstrate by contrast precisely what is lacking in its abuse of process counterclaim. In short, ThermoLife's abuse of process counterclaim, as pled, fails to state a claim upon which relief can be granted.

## ARGUMENT

ThermoLife's Opposition does not cure the fundamental deficiencies identified in Cardio Miracle's Motion to Dismiss. ThermoLife's counterclaim remains premised on

**1**

normal litigation filings made during a contested preliminary injunction proceeding. ThermoLife's attempt to recast these filings as tortious conduct fails for the reasons set forth below.

## I.  Preliminary Injunction Proceedings Are Normal Litigation — Not a Basis for Abuse of Process

ThermoLife's counterclaim targets four filings, all made in the course of a contested preliminary injunction proceeding: (1) the Motion for Preliminary Injunction filed April 26, 2025; (2) the Emergency Motion for Protective Order filed June 6, 2025; (3) the Reply in Support of the Motion for Preliminary Injunction filed September 5, 2025; and (4) the Renewed Motion for Preliminary Injunction filed November 21, 2025. (Dkt. 87, Counterclaim ¶ 83.) Every one of these filings is a routine incident of preliminary injunction practice.

Preliminary injunction proceedings commonly, if not inherently, involve motions, protective orders, reply briefs, expert declarations, and renewed motions. All of these all are contemplated by the Federal Rules of Civil Procedure and this Court's local rules. The entire point of a preliminary injunction is to preserve the status quo and restrain the opposing party's conduct pending a resolution on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Cardio Miracle sought to enjoin ThermoLife from filing Amazon takedown requests that Cardio Miracle contended (and still contends) were based on an objectively baseless assertion of patent infringement. That is a legitimate litigation objective.

2

This Court managed the preliminary injunction proceedings through its normal procedures, permitted the renewed motion, and at no point sanctioned Cardio Miracle or found its filings to be abusive, frivolous, or vexatious. (Dkt. 42; Dkt. 78 at 3-4.) While ThermoLife contested these filings and speculated on Cardio Miracle's motives, none of these procedural disputes transformed routine advocacy into an abuse of process. Permitting an abuse of process claim based on these filings could expose every party seeking emergency injunctive relief to a retaliatory tort claim simply because the opposing party disagrees with the strategy or pace of litigation.

ThermoLife's Opposition does not alter this analysis. ThermoLife argues that Cardio Miracle's conduct amounted to "apparent gamesmanship." (Dkt. 96 at 2.) But ThermoLife conflates the Court's admonition regarding a single scheduling dispute with a finding of tortious misconduct. The Court's statement that it was "bothered" by Cardio Miracle's deposition scheduling was addressed through the Court's normal procedural tools. (Dkt. 87 at 72, 86; Dkt. 42 at 6, n. 5.) This is precisely the remedy that exists for perceived litigation misconduct and is not intended to be interchangeable with a separate tort claim.

## II.   Abuse of Process Claims Are Reserved for Extreme Misconduct — Not Routine Litigation Disputes

Under Arizona law, the tort of abuse of process has historically been directed at the coercive misuse of compulsory court mechanisms — subpoenas used to exhaust an opponent's financial resources, writs of attachment, garnishment orders, writs of

**3**

execution, and similar instruments that compel a party or third party to act. *See Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (Ct. App. 1982). As the Ninth Circuit has observed, "[t]he essence of the tort of abuse of process is the perversion of legal proceedings properly set in motion to a purpose for which it was not intended." *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 696 (9th Cir. 1981) (applying Arizona law). "The usual form of the tort is coercion to obtain a collateral advantage not the proper object of the proceeding, as in forms of extortion." *Id.*

ThermoLife's Opposition cites a series of cases for the proposition that its abuse of process claim is well-supported under Arizona law. (Dkt. 96 at 7-10.) But a close examination of those authorities reveals the opposite: in every case where an abuse of process claim was sustained or survived dismissal, the underlying conduct involved extreme misconduct far beyond anything alleged here. ThermoLife's cases, when read on their actual facts, demonstrate by contrast precisely what is lacking in its counterclaim.

### III. ThermoLife's Cases Are Mischaracterized and Actually Demonstrate What Is Lacking Here

ThermoLife's principal authority, *Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876 (Ct. App. 1982), concerned the totality of egregious conduct throughout an entire case, including lying to the judge about the contents of a tape recording. (Dkt. 96 at 6-7.) Cardio Miracle acknowledges that *Nienstedt* defines "process" broadly under Arizona law, but ThermoLife conflates the breadth of that definition with the sufficiency of its factual allegations. Even under *Nienstedt*'s broad framework, the tort still requires a

**4**

willful act not proper in the regular conduct of the proceeding, an ulterior motive, and resulting damages. 651 P.2d at 880-82. Similarly, *Cota v. Arizona*, No. CV-10-1024-PHX-GMS, 2010 WL 4682488 (D. Ariz. Nov. 10, 2010), involved detectives who lied to a grand jury, resulting in the plaintiff spending two years in jail. *Norton v. Arpaio*, No. CV-15-00087-PHX-SPL, 2015 WL 13759956 (D. Ariz. Nov. 20, 2015), is a malicious prosecution case in which detectives made false statements under oath to obtain warrants and an indictment when there was no evidence of wrongdoing, leading to the plaintiff's arrest and incarceration. In each of these cases, the conduct underlying the abuse of process claim was pervasive deception to the court or fabrication of evidence — not the transparent and good faith filing of motions in a civil patent dispute.

The same pattern holds for ThermoLife's remaining authorities. In *GRK Holdings, LLC v. First American Title Ins. Co.*, 2011 WL 42620 (D. Ariz. Jan. 6, 2011), a law firm knowingly filed a quiet title action based on an erroneously recorded release of a trust deed that they knew was wrong, fundamentally violating Rule 11. They then moved for a temporary restraining order (TRO) and evidentiary hearing repeating the same false assertions, and — most damning — expressly told the opposing party they did this to drive up legal costs so that foreclosure would be too expensive to proceed with. *Id.* at \*2-3. The entire case was built on a deliberate lie, and the defendants admitted their extortionate purpose.

**5**

SL_8953675.1

*BKN Mgmt. LLC v. Caniglia*, No. CV-14-01465-PHX-GMS, 2014 WL 12672632 (D. Ariz. Nov. 25, 2014), is an unpublished order that barely spans two pages, provides virtually no facts or analysis, and concerned a complaint filed allegedly to retaliate against the opposing party and prevent fundraising efforts. It offers no meaningful guidance here.

Critically, the cases in which courts *rejected* abuse of process claims further confirm that ThermoLife's counterclaim cannot survive. In *Bollfrass v. Meinhold*, No. CV-19-04014-PHX-MTL, 2020 WL 3440289 (D. Ariz. June 23, 2020), the court dismissed an abuse of process claim predicated on the defendant's filing of an injunction against harassment as part of an alleged "campaign" to harass the plaintiffs. The court held that the plaintiff had, "[a]t best, ... alleged that Ms. Magaard carried out the injunction process to its authorized conclusion (even though she may have done so with bad intentions)," and that "the mere initiation of the injunction against harassment proceedings is not sufficient to maintain an action for abuse of process." *Id.* at *15.

In *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695 (9th Cir. 1981), the Ninth Circuit examined specific conduct — threats to file suit, filing suit, and issuing extensive discovery requests — and found that *none* amounted to abuse of process, because the discovery requests were "simply a proper request seeking information relevant to [the defendant's] claims" and were "not exploited to obtain collateral advantage or used in any form of extortion." *Id.* at 696-97. And *Joseph v. Markovitz*, 27

**6**

Ariz. App. 122, 551 P.2d 571, 574 (1976), and *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1060 (D. Ariz. 2012), state the controlling principle: "[t]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Even *Flores v. Rafi Law Group PLLC*, No. CV-24-00256, 2024 WL 4988390 (D. Ariz. Dec. 5, 2024), which ThermoLife cites, supports Cardio Miracle: the court noted that abuse of process should typically be confined to mechanisms such as garnishment and writs, requires an extortionate purpose, and *dismissed* the claims for lack of plausibility. *Id.* at *3.

The contrast between these authorities and the present case is stark. In the cases where abuse of process was sustained, the defendants engaged in conduct that was independently wrongful and unrelated to any legitimate litigation objective: knowingly filing complaints built on fabricated facts, lying to courts about evidence, presenting false testimony to grand juries, and expressly admitting to extortionate purposes. These are not cases about the pace or strategy of litigation — they are cases about parties who weaponized the judicial system through fraud and deception. Nothing remotely comparable is alleged here.

ThermoLife's counterclaim targets four filings made in the ordinary course of contested preliminary injunction proceedings. (Dkt. 87, Counterclaim ¶ 83.) Cardio Miracle filed a motion for preliminary injunction, sought a protective order, filed a reply brief, and renewed its motion when the Court permitted it to do so. Every one of these

7

actions is contemplated by the Federal Rules and this Court's local rules, and none involves the kind of independent wrongfulness — fabricated evidence, knowing Rule 11 violations, express extortion — that the cases ThermoLife cites actually required.

ThermoLife's strongest factual allegation — that a declarant stated he drafted his declaration "from scratch" when portions may have been borrowed from another case — does not come close to the level of misconduct at issue in any of the cases ThermoLife cites. In *GRK Holdings*, the defendants built an entire lawsuit on a known falsehood and expressly told the opposing party they did so to make foreclosure too expensive to pursue. In *Nienstedt*, a party lied to the judge about the contents of a tape recording. In *Cota* and *Norton*, law enforcement fabricated evidence before grand juries, leading to wrongful imprisonment. A declarant's characterization of how he prepared his declaration does not mislead the Court about the nature or facts of the case in any way comparable to these scenarios. It is not the sort of conduct that has ever supported an abuse of process claim under Arizona law.

Indeed, Cardio Miracle did nothing more than carry the preliminary injunction process to its authorized conclusion — it sought a ruling from this Court on whether ThermoLife should be enjoined from asserting the '531 patent. That is exactly what the preliminary injunction process is designed to accomplish. As *Joseph*, *Donahoe*, *Bollfrass*, *Blue Goose*, and *Flores* all confirm, carrying litigation processes to their intended conclusion — even aggressively, even with alleged bad intentions — does not give rise to

**8**

SL_8953675.1

liability for abuse of process. ThermoLife's dissatisfaction with Cardio Miracle's litigation strategy does not transform the ordinary use of judicial procedures into an actionable tort. Granting an abuse of process claim on the facts alleged here would be an extraordinary and unprecedented expansion of the tort, effectively weaponizing it against any party that vigorously pursues preliminary injunctive relief.

## IV.    Conclusion

Every case ThermoLife cites in its Opposition involves extreme misconduct — fraud on courts, fabricated grand jury evidence, knowing Rule 11 violations, express admissions of extortion, wrongful imprisonment — that has no analog in this case. ThermoLife's counterclaim is predicated on routine preliminary injunction filings that are the ordinary incidents of contested litigation. Granting an abuse of process claim on the facts alleged here would be an extraordinary and unprecedented expansion of the tort, effectively weaponizing it against any party that vigorously pursues preliminary injunctive relief.

For the foregoing reasons, Cardio Miracle respectfully requests that the Court grant its Motion to Dismiss Count II (Abuse of Process) of ThermoLife's Amended Answer and Counterclaims.

9

Dated: May 1, 2026                          Respectfully Submitted,

                                            /s/  *Clinton E. Duke*

                                            Clinton E. Duke
                                            **DENTONS DURHAM JONES PINEGAR,
                                            P.C.**

                                            *Attorney for Plaintiff Evolution
                                            Nutraceuticals Inc.*

**10**

SL_8953675.1

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on or about **May 1, 2026**, I electronically transmitted the

attached document to the Clerk's Office using the U.S. District Court for the District of

Arizona's Electronic Document Filing System (ECF), by which it was then transmitted to

at least the counsel for Defendant listed as counsel of record on ECF.

/s/ *Clinton E. Duke*

Clinton E. Duke
**DENTONS DURHAM JONES PINEGAR, P.C.**

*Attorney for Plaintiff Evolution Nutraceuticals Inc.*

11

SL_8953675.1