**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Evolution Nutraceuticals Incorporated,
Plaintiff,
v.
ThermoLife International LLC,
Defendant.

No. CV-25-00461-PHX-DJH

**ORDER**

On March 20, 2026, Plaintiff and Counterclaim Defendant Evolution Nutraceuticals Inc. d/b/a Cardio Miracle ("Cardio Miracle") filed a Motion to Dismiss ThermoLife's Abuse of Process Counterclaim (Doc. 90). Thereafter, Defendant and Counterclaim Plaintiff ThermoLife International LLC ("ThermoLife") filed a Response (Doc. 96) in opposition, and Cardio Miracle filed a Reply (Doc. 98).

## I. Background

Overarchingly, the present matter stems from a dispute about the validity and infringement of ThermoLife's patent, specifically U.S. Patent No. 8,455,531 (the "531 Patent"). (*See generally* Doc. 1). Cardio Miracle produces dietary supplement products to stimulate safe, sustained nitric oxide in the body's vasculature. (*Id.* at ¶ 21). ThermoLife is a raw material supplier for dietary supplements and holds the 531 Patent, amongst others. (*Id.* at ¶¶ 25–26). Cardio Miracle's products were sold on Amazon.com, but due to takedown notices filed by ThermoLife with Amazon, they were removed from the platform. (*Id.* at ¶¶ 4–5, 23). After unsuccessful attempts to have its products reinstated,

Cardio Miracle filed the present case on February 12, 2025, alleging multiple claims against ThermoLife. (*See generally id.*).

On April 26, 2025, Cardio Miracle filed a Motion for Preliminary Injunction to enjoin ThermoLife's allegedly wrongful assertion of the '531 Patent and compel ThermoLife to withdraw Amazon takedown requests. (*See* Doc. 20). The parties then stipulated to a partial injunction and agreed to conduct expedited discovery. (Doc. 23). With the Court's permission, the timeline for briefing the original Preliminary Injunction Motion was extended, ultimately becoming ripe for ruling on September 5, 2025. (*See* Docs. 23, 57). Yet, ThermoLife filed a Motion to Strike (Doc. 61) Cardio Miracle's Reply in support of its Motion, arguing that the Reply raised new factual arguments that were not presented in its Motion nor responsive to arguments in ThermoLife's Response. After the Motion to Strike was fully briefed, the Court found that the Reply contained newly raised arguments; thus, the Court denied Cardio Miracle's Motion for Preliminary Injunction without prejudice and allowed Cardio Miracle leave to re-file. (*See* Doc. 78). Cardio Miracle's renewed Motion for Preliminary Injunction was ultimately denied on April 13, 2026, for a failure to show irreparable harm. (*See* Doc. 95).

Before either of the Court's rulings on the preliminary injunctions, ThermoLife moved to dismiss certain claims in Cardio Miracle's Complaint. (Doc. 24). This effort was partially successful as the Court dismissed three claims but denied the remainder of ThermoLife's Motion. (*See* Doc. 86 at 15). The resolution of this Motion prompted ThermoLife to file an Amended Answer (Doc. 87), in which ThermoLife brought patent infringement and abuse of process claims against Cardio miracle. (*Id.* at ¶¶ 34–92).[1]

As to the abuse of process counterclaim, ThermoLife alleges that "Cardio Miracle's conduct throughout this litigation, including in connection with its litigation of the preliminary injunction it requested, indicates its improper purpose." (*Id.* at ¶ 59). ThermoLife expressly identifies the following conduct by Cardio Miracle: "(a) the Motion for Preliminary Injunction filed April 26, 2025; (b) the Emergency Motion for Protective

[1] Unless otherwise stated, any cited paragraph numbers in docket entry 87 refer to ThermoLife's Counterclaims, rather than its Amended Answer.

Order filed June 6, 2025; (c) the Reply in Support of the Motion for Preliminary Injunction filed September 5, 2025; and (d) the Renewed Motion for Preliminary Injunction filed November 21, 2025." (*Id.* at ¶ 83). ThermoLife claims these acts were undertaken for ulterior purposes, such as exposing it to excessive litigation expenses and preventing it from asserting its patent rights. (*Id.* at ¶¶ 88–90). And, as a result of these alleged processes, ThermoLife states that it experienced "significant harm." (*Id.* at ¶ 91). Cardio Miracle now moves to dismiss this counterclaim.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for their claims. Fed. R. Civ. P. 8(a)(2). This standard does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Put differently, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But

courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III. Discussion**

In moving to dismiss ThermoLife's abuse of process counterclaim, Cardio Miracle argues that ThermoLife failed to identify a "process" to sustain an abuse of process claim; ThermoLife alleged only ordinary litigation conduct; allegations of ulterior motive are conclusory; the alleged damages are nothing more than ordinary litigation costs; and the counterclaim is barred by Arizona's litigation privilege. (Doc. 90 at 6). ThermoLife disputes each argument raised by Cardio Miracle, maintaining that its counterclaim is adequately pled.

Under Arizona law, the elements of an abuse of process claim are: (1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings; and (3) harm incurred by plaintiff from the misuse of such process. *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982). "Abuse of process…is not commencing an action or causing process to issue without justification, but requires an overt act other than the initiation of a lawsuit to effect the illegitimate end." *In re Am. Contl. Corp./Lincoln Sav. & Loan Sec. Litig.*, 845 F. Supp. 1377, 1385 (D. Ariz. 1993) (internal quotations and citations omitted). Further, "a generalized allegation that a defendant has misused the litigation process as a whole" cannot sustain an abuse of process claim. *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 888 (Ariz. Ct. App. 2004). Such a claim "must be based on something more than the opposing party's mere persistence in the litigation." *Id.* With these principles in mind, the Court turns to the parties' arguments.

**A. Judicial Process**

The first issue is whether ThermoLife has adequately alleged a "process." ThermoLife's abuse of process claims is predicated on four items: "(a) the Motion for Preliminary Injunction filed April 26, 2025; (b) the Emergency Motion for Protective Order filed June 6, 2025; (c) the Reply in Support of the Motion for Preliminary Injunction filed September 5, 2025; and (d) the Renewed Motion for Preliminary Injunction filed

November 21, 2025." (Doc. 87 at ¶ 83). The Court takes Cardio Miracle's point that these are routine filings in the course of litigation and maintains healthy skepticism about the merits of this counterclaim. However, given the Motion before the Court, the only concern is whether a judicial process has been pled, and Arizona courts have taken an expansive view of what constitutes such a process. *See Nienstedt*, 651 P.2d at 880–81 (rejecting a strict definition of "process" and stating that it "encompasses the entire range of procedures incident to the litigation process"). Without binding authority to the contrary, the Court cannot say that the filing of the alleged Motions and Reply are not included in the "entire range of court procedures incident to litigation." *Id.* at 880. ThermoLife was required to specify particular processes to allege an abuse of process claim, and it did as much here.

**B. Willful Act**

Next, Cardio Miracle argues the abuse of process claim "fails because it does not allege a willful act or use of process not proper in the regular conduct of the proceeding." (Doc. 90 at 10). In support of this argument, Cardio Miracle cites *Joseph v. Markovitz*, 551 P.2d 571, 575 (Ariz. App. 1976) as well as *Crackel* for the premise that ThermoLife must "show that, in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." 92 P.3d at 889; (Doc. 90 at 11). However, as ThermoLife notes, *Crackel* discusses what evidence must be shown to avoid a directed verdict, and similarly *Joseph* was at the summary judgment stage. Again, the issue here is whether ThermoLife sufficiently alleged a willful act in the use of judicial process, and upon review of the counterclaim, it has. (*See* Doc. 87 at ¶ (alleging that Cardio Miracle's use of the alleged processes "was willful: it retained and directed counsel, made deliberate strategic choices about timing and content, and took each action with full awareness of the consequences for ThermoLife. The use of these processes was not inadvertent, mistaken, or the product of good-faith legal error. It was calculated.").

**C. Ulterior Motive**

Third, Cardio Miracle contends that ThermoLife fails to adequately allege ulterior

motive, emphasizing that several of the alleged "ulterior motives" are the very purpose of that type of motion. (Doc. 90 at 13–14). ThermoLife disagrees with Cardio Miracle's assessment and points to the "multiple specific ulterior motives" alleged in the counterclaim. (Doc. 96 at 14). In particular, ThermoLife alleges that the identified processes were for "improper purposes, including to freeze ThermoLife's legitimate patent enforcement, to deceive ThermoLife into a favorable injunction by stipulation, and then to drag out and manipulate the proceedings for as long as commercially advantageous[.]" (Doc. 87 at ¶ 84). "Cardio Miracle's motive was also to expose ThermoLife to excessive attorney's fees and legal expenses." (*Id.* at ¶ 90). The foregoing allegations suffice to state an ulterior motive for the judicial processes, *see*, *e.g.*, *Nienstedt*, 651 P.2d at 882 (acknowledging that the use of process to expose the injured party to excessive attorney fees and legal expenses constitutes improper purpose), and are supported by corroborating allegations of litigation conduct. (*See*, *e.g.*, Doc. 87 at ¶¶ 84–87).

**D. Damages**

Lastly on failure to plead, Cardio Miracle argues that ThermoLife did not identify any harm incurred apart from the ordinary costs of litigation. (Doc. 90 at 15). However, Cardio Miracle cites no authority that ThermoLife's litigation expenses resulting from an alleged abuse of process are insufficient to properly plead the harm element. Here, ThermoLife alleges that it "suffered significant harm and should therefore receive compensatory damages in an amount to be proven at trial, including but not limited to economic losses, reputational harm, emotional distress, consequential damages and attorney's fees and costs." (Doc. 87 at ¶ 91). Proving up the alleged "significant harm" will be ThermoLife's burden at a later stage of proceedings,[2] but for now under Rule 8's liberal standards, ThermoLife has stated a claim for abuse of process.

**E. Litigation Privilege**

Cardio Miracle finally asserts that ThermoLife's abuse of process counterclaim is

[2] To the extent Cardio Miracle takes issue with ThermoLife's request for punitive damages, this is similarly an issue for a later stage of proceedings. ThermoLife may bring a request for punitive damages alongside its tort claim, but it will later be required to meet the requisite burden to establish entitlement to such damages.

barred by Arizona's litigation privilege.[3] Arizona's litigation privilege protects the speech of "judges, parties, lawyers, witnesses and jurors." *Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984). Nonetheless, the privilege "does not preclude an action for improper litigation conduct." *Goldman v. Sahl*, 462 P.3d 1017, 1033 (Ariz. Ct. App. 2020). Thus, the abuse of process counterclaim is not covered by Arizona's litigation privilege.

As stated above, the Court holds considerable doubt as to the underlying merits of ThermoLife's abuse of process claim, but Cardio Miracle's arguments largely concern the substance of ThermoLife's counterclaim. Any consideration outside the four corners of a pleading is inappropriate to address on a motion to dismiss. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) ("The issue is not whether a plaintiff will ultimately prevail but whether [it] is entitled to *offer* evidence to support the claims.") (citation omitted). At bottom, ThermoLife has alleged the elements of an abuse of process claim and therefore may maintain it at this time.

Accordingly,

**IT IS ORDERED denying** Cardio Miracle's Motion to Dismiss ThermoLife's Abuse of Process Counterclaim (Doc. 90).

**IT IS FURTHER ORDERED** that moving forward in these proceedings, the parties must specifically identify the meet and confer efforts that were undertaken before the filing of a motion. Failure to do so or failure to make adequate efforts may result in the striking of the offending party's motion.

Dated this 2nd day of November, 2026.

Honorable Diane J. Humetewa
United States District Judge

[3] Cardio Miracle appears to abandon this argument as it is not maintained in its Reply (*see* Doc. 98), but for completeness's sake, the Court will briefly address it.